## William Davidson, Appellant, *v.* R. A. Humes, trading as The Humes Torpedo Company.

*Negligence—Shoooting oil well—Explosion of torpedo—Contract.*

In an action of trespass to recover damages for injuries to an oil well by the explosion of a torpedo, where it appeared that the defendant contracted with the plaintiff to shoot the well, but without any guaranty that the well should be shot without any resulting injury, the defendant is liable for damages only in case of negligence, the burden of proving which is on the plaintiff.

Argued Oct. 18, 1898. Appeal, No. 92, Oct. T., 1898, by plaintiff, from judgment of C. P. Butler Co., Dec. T., 1897, No. 65, on verdict for defendant. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for negligence. Before GREER, P. J.

At the trial it appeared that on July 29, 1897, the defendant contracted to shoot an oil well belonging to the plaintiff. In the performance of the work the torpedo, which was a fifteen quart glycerine shot, failed to go off. The defendant then dropped a quart glycerine torpedo into the well for the purpose of exploding the first shot. The second shot failed to explode and, as it was being raised, the rope broke, and the small shot fell and exploded, injuring the casing of the well. There was no guaranty in the contract that the well should be shot without any resulting injury. The evidence tended to show that

the defendant used reasonable care in the performance of the dangerous work.

Further facts and a statement of the material parts of the testimony appear from the charge of the court, which was as follows :

The case you have been sworn to try is an action of trespass brought by Mr. Davidson, of Adams township, against the Humes Torpedo Company, to recover damages which the plaintiff alleges he should have to compensate him for injuries that he received on account of the defendant carelessly and negligently shooting an oil well on the 29th day of July last, in Adams township, this county.

[The rule of law is in all cases in the civil court that the plaintiff must make out his case from the weight of the evidence ; that is, the burden of proof in all civil cases is on the plaintiff, and if he fails to furnish that burden of proof, then the verdict must be for the defendant, and in all trespass cases the law requires the plaintiff to prove that there was negligence on the part of the defendant.    This is something that cannot be presumed ; it must be proved, and in order to find a verdict for the plaintiff in this case you must be able to find proof that the defendant company was negligent; you cannot presume, you cannot guess, but you must have proof from the witnesses or other source in the case that the defendant was guilty of negligence] [3] and you must also find that the damage resulted from that negligence ; if you should fail in either one of these, then the verdict must be for the defendant.

Now, gentlemen, the plaintiff, William Davidson, on the 29th of July last, was the owner of a farm in Adams township on which he had two small oil wells, one doing about two barrels and the other about a barrel or a barrel and a quarter.    The one that produced a barrel and a quarter was also producing some gas, sufficient gas to run that well and another well.    This well was 1,517 feet six inches deep.    It had been drilled several years ago and was at one time a good producer but had run down to a small well.    There was about 1,410 feet of casing in the well.    The well had been shot before, and the plaintiff concluded that he would have another shot put in the well, so on July 29, the Humes Torpedo Company sent Mr. J. B. Humes,

their shooter, to Mr. Davidson's place, and after the well was prepared for shooting, the tubing drawn and the well put in order for shooting, at the request of Mr. Davidson the defendant company, by their agent and operator, Mr. Humes, put a shot of fifteen quarts of glycerine in the well; that is, he put it down in the well; you saw the vessels in which the glycerine is placed to be put in the well; they are made of tin and made to hold the amount of glycerine that the owner of the well desires to have put in and shot. The plaintiff instructed the defendant where he wanted the shot put, and after all things were ready he got the shell placed in the well, fixed his reel in shape as he thought best, some distance from the hole, and filled the shell, which was about forty feet long, with glycerine, put in fifteen quarts; had the amount of anchor desired to raise it; you saw the vessel and the way the anchor is attached; the anchor is the tin below the shell that is to raise it or lower it to the place he desires to have it explode. He was attempting to shoot this by what is called a line weight. You see the way the shell was made to be exploded, on top of it there is an iron, a small round iron which is struck by a small weight so as to drive it to the cap below, which cap explodes, and when it explodes it explodes the shell. Sometimes these torpedoes are exploded by what is called a go-devil, a weight let down in the well without regard to a line, but in this case they concluded they would use a line weight, and in this case the weight was a piece of pipe, and the wire put through the pipe, and the weight let down the wire and that, it is said, was done for the purpose of keeping the weight to its place. Sometimes when a go-devil goes down it may go to the side of the firing head; that cap is fixed and the firing head on top and the weight goes down on top and explodes it, on the same principle that a gun would be fired, but sometimes the go-devil will miss the firing head and of course the shell would not go off. In this case the weight that was to put off the shell was a piece of iron pipe put on the wire that had let down the torpedo, and after it went down some distance it cut the line; for some cause or other this pipe cut the line and the shell did not explode ; then Mr. Humes went to his wagon and got a quart shell, that is called a squib, and brought it up for the purpose of putting it in and exploding it, and expecting the explosion of this squib

to explode the torpedo shell in the bottom.    He attached a
weight to the lower end of the squib and then attached the
same wire he had let the other down with, attached the squib to
that wire and let it go down off the reel slowly, and it went
down, and then he let the weight go down, but it didn't go
off for some reason ; he then took the wire and shook it and con-
cluded he would draw it out and did draw it out ; he had Mr.
Martin turning the reel on which the wire was wound and Mr.
Ross Davidson was standing near the hole watching the wire as
it came out, and after he got it almost out they found a kink on
the wire, and Mr. Humes helped the kink over the pulley that
stood above the hole, and saw that it was wound in on the reel ;
when the squib came up or was just about out of the hole they
noticed another kink and Mr. Ross Davidson hollowed " whoa,"
and the man turning the reel stopped, but before he reached it,
or before it was reached, the shell was gone, the wire broke and
it went down into the hole.    That far there seems to be no dis-
pute, as between the plaintiff and the defendant.    [Mr. Humes
says he hollowed " whoa" at the same time, and was watching
both the reel and the wire, but that far there seems to be but
little dispute.]  [4]

The plaintiff alleges that this squib caused the injury to the
well and that this injury was caused by the defendant's negli-
gence.    It seems that if a wire that is used in lowering a shell
in a well like this becomes too slack, it will kink, and is very
likely to break off.    Now the plaintiff alleges that the defend-
ant was careless and negligent in that, that he ran in too much
slack line ; that when the squib went down the first time, he put
down more wire than he ought to have put down ; that it was
his duty to put a weight on the squib, which he did, and his
duty to watch this line and hold it so that it would be tight all
the time ; so tight that a kink could not get into it, especially
slackness.    The plaintiff alleges that the defendant was not
careful in this respect, but negligent, and let in too much wire,
and this wire kinked in the hole, and when it came up that it
broke because it was kinked, and that it fell because the line
broke, and that it exploded before it passed through the 1,400
feet of casing, about 200 feet above where the shot was, and this
explosion damaged, tore up the casing as you saw it here, and
that let the water in and that damaged and drove away the oil

and spoiled his gas, and he claims that he laid out $1,420 trying to repair this loss, and lost not only the gas but the oil, and he is out whatever the well was worth and $1,420 in attempting to repair it.

Try to keep your minds as carefully on the testimony right along here as you can. If there was no negligence in putting in this squib, then the verdict must be for the defendant. The negligence as claimed here is in the slack line put in with the squib and the falling of the squib in the hole and the explosion before it reached the bottom.

Now, gentlemen, before the plaintiff can recover he must satisfy you by the weight of the evidence that there was negligence in the defendant in putting in this squib. No negligence is claimed as to bringing it there nor letting it down other than that it was as I stated, that there was too much slack wire. The plaintiff claims that this squib exploded at least 200 feet from where it was intended to be exploded. His desire was to have it explode at the shell but it exploded above the shell and exploded in this casing. That is the plaintiff's theory.

Now then, gentlemen, if there was negligence on the part of Mr. Humes, who put it in, and negligence means the absence of reasonable and ordinary care under the circumstances, and a man who is in a business of this kind handling a dangerous explosive, as glycerine is, is required to use a high degree of diligence and care and watchfulness. The law requires the diligence and care to be increased as the danger of the operation increases. So it was the duty of the defendant to use such care and diligence as was within its power and skill; it was the defendant's duty to furnish good material and good machinery and good appliances and, as I said, take great care and caution. Was that done? The plaintiff, to prove that the squib exploded in this casing, put on the stand the witness who cleaned the well out afterwards, Mr. Johnston, who says that at the request of Mr. Davidson he cleaned out this well and took out the casing, and when he took out the first casing he found no signs of bridging by tin at all (and it is said by the witnesses who heard the testimony that where the explosion is successful it does not always carry the tin out of the hole, the tin that is in the shell); that when he cleaned out this well he saw no signs of any bridging or of the tin shell, and the other witnesses with him

testify about the same thing. [Then the proof is that after Mr. Johnston had taken out the casing and fixed the well, he claims he got it down to the depth of 1,481 feet, and he claims that he stopped there because Mr. Humes had cautioned him not to go any deeper on account of the danger.] [5] Mr. Humes then came back on September 5, and put in another squib, a part of which was here. The plaintiff alleges that that squib put off the shot down below and that it was not the big shot that destroyed the casing, but it was the squib that had fallen at the top of the well the first time, and that the second squib brought about the result desired the first time. In support of that, Johnston and the other men say that after that shot they took a lot of tin out of the casing; that the casing was bridged with tin and they took it out, and there was very much more tin there than would have been, had there been nothing on September 5 but the squib. You heard his testimony and the testimony of the other witnesses as to that. From the testimony in the case, from the plaintiff's testimony in this case can you find such proof and such evidence as will show negligence on the part of the defendant company? Was this piece of casing shot and destroyed by the squib? In order to recover you must find that it was. If you cannot find proof enough to convince you that the squib destroyed this casing then the verdict must be for the defendant, because it was the shooting off of the squib, the plaintiff alleges, caused the accident. How is that?

[Mr. Humes, the man who operated, went on the stand and he testified as to his experience in shooting wells (and the plaintiff admits that he is a skilful, practical shooter), and that he shot this well, as he told you, and used all the care and diligence possible.] [6]

Before we go to that, the plaintiff put on Johnston and Ross Davidson and Martin, who say that when the squib went down and did not go off, that is the first squib, on July 29, that Mr. Humes says, "I am lost," and then commenced working with it, and then wound up two or three rounds of the reel, and he was holding the wire and he says, "Now I have got it." The plaintiff argues from this statement, from this proof of the statement by Mr. Humes, that Mr. Humes had too much slack in at that time and wound up two or three rounds on the reel before

he got it tight.   It is for you to pass on the testimony; if Mr. Humes did say that, if he did say, " I am lost," and have them turn the reel and wound two or three times, made two or three turns, was there slack line in the well, and did he through negligence put too much slack line in the well?   That is a thing you can observe and consider, as to the careful manner in which the squib was put in.

The operator, Mr. Humes, makes about the same statement as that of the plaintiff, up until this squib was exploded; but he claims that he did not say so; he says he did not make that statement and that there was no slack line in there; he admits that there were two kinks and helped one over the pulley, and when the other came it broke so quickly that he never could get near Mr. Davidson to catch it and that there was no fault of his in that; that he acted as promptly and quickly as possible. He claims that the squib did not explode that went down that day until it reached the bottom of the well and struck the fifteen quart shell, or struck water in the well or something, and it was not the squib that destroyed this casing but that the squib exploded the big shell and the big shell in exploding collapsed, and went on to explain to you how it was done.   If that is the case the verdict would have to be for the defendant.   How is that?   You heard the testimony of the plaintiff's witnesses as to what he said in regard to this.   [Mr. Humes says that after the casing was drawn he went back on September 5 and put in another squib and that the other squib went off, but there was no big shot went off that day; that he noticed by the explosion and by the sound that there was nothing exploded on September 5 but the little shot, and that the big shot had gone off at the other shooting.   You have the testimony of witnesses right against each other on that question, and you have to settle that.] [7]   You may have to settle it by some circumstantial evidence.   [The defendants argue that if this casing was exploded by the little shot, by the squib, as claimed by the plaintiff, that it would have been more expanded; that the shot going off inside would have blown it outwards, and that it was not so destroyed because it was compressed, and that the compression was brought about by the force of the explosion of the big shot below coming up and getting between it and the walls of the well.] [8]   The plaintiff put this casing in evidence and called

the attention of the witnesses to the holes, as you saw, and which the plaintiff alleges were made by the force inside the pipe; that a force below it or around it would not have made these holes in the form they are made, and only could have been made by an explosion inside this piece of pipe. That is something for you to consider. The main thing for you to determine in the first place, was this exploded by the little shell or the big shell? If it was exploded by the big shell at the bottom of the well, then the verdict must be for the defendant; if it was destroyed by the explosion of the squib in it, then the next question to inquire into, was there negligence on the part of the defendant in handling the squib? If you find that there was negligence on the part of the defendant in handling it, and that negligence caused an explosion at the wrong place, and that explosion destroyed this casing, and that casing let the water in and drove the gas and oil away, then you find a verdict for the plaintiff, unless there was contributory negligence shown by the defendant. I believe there was no attempt at that. In order to determine this question both parties have called witnesses who have been in the practice of shooting wells, and the defendant called some of the witnesses that the plaintiff called, and you heard their testimony; you heard the testimony of these expert witnesses; [these expert witnesses and Mr. Humes himself say that lines sometimes get kinked in a well without being slack, when they are tight;] [9] they say that there may be lodestone or some resistance in the well that prevents the squib from going down, and that the wire will slacken and may get kinked in that way, and say they may get kinked by going over a bump or something in the hole, and it was possible for it to get kinked when passing out of the casing into the hole below the casing. They say again that when the weight goes down it may go down so hard as to rebound and come up again, and in that way put a kink in the wire; that with using the best of care and skill known to the business in a dry hole it could be put down without a kink, and a number of them say kinks would occur with the very best care and very best condition in which the well could be put. Now, then, that is material on the question of alleged negligence in putting in the squib on July 29. These men say that the best means of lowering a shell is by a wire; that a hemp line would not do and a chain

is not successful, and it is usual in this country to use this No. 16 wire that was used in this case. You have all this testimony before you. We spent almost two days in the trial of this case, and we recognize it as rather a new case. This is the third case I have tried of this kind, or rather tried one before this and nonsuited one. [From this testimony, as I stated before, you must find that the weight of evidence shows negligence on the part of the defendant company before the plaintiff can recover, and you must find that that negligence resulted in an explosion of the shell in this piece of casing, and that the damage to the well came from that. Let me say to you that you cannot infer or presume negligence; you must find proof of it; the plaintiff must furnish proof of the careless conduct of the defendant; if he does not furnish it, the verdict must be for the defendant.] [10] . . . .

[Now, gentlemen, take this case, and as I stated before, negligence must be proved, it cannot be presumed] [11]; the burden of proof is on the party alleging it; if the defendant is a practical, successful shooter, has knowledge that there is lode-stone in the wells in this territory, then it would be his duty as a practical shooter to provide every means that might be within his power or reach to prevent the action of the lode-stone on the shells, whatever would do it. I stated to the jury that the plaintiff's witness testifying that this well was dry, that is, no water in it, that some of the witnesses of the plaintiff testified that the shell could be put there without kinks in the wire and could be taken out safely without an accident; it is for you to determine that question from the evidence. I said some of the witnesses said that in chief, and it is for you to say what their testimony was on cross-examination.

(In answer to a question by one of the jurors.)

[There is no doubt that he (Mr. Johnston) said that he had gone down 1,481 feet; as I understand it, the inquiry is this: if that shell was forty-five feet high, how could he go down with the tools within thirty-six feet of the bottom without exploding that shell? That is for you to determine from the evidence. That is a question of testimony; if he told him not to go within thirty feet, and he went down within thirty-six feet of the bottom, he was at least nine feet past the top of the shell.] [12]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* among others were (2–12) above instructions, quoting them.

*Joseph B. Bredin,* for appellant.—The burden of proof is on plaintiff to show negligence of the defendant; except (*a*) where proof of some contract or undertaking and damages make out a prima facia case; or (*b*) where the thing is shown to be under the management of the defendant, and the accident is such that in the ordinary course of things it does not happen if those who have the management use proper care: Chicago W. & V. Coal Co. v. Glass, 34 Ill. App. 364; Buck v. Penna. R. Co., 150 Pa. 170; Hayman v. R. R., 20 W.. N. C. 466; Shafer v. Lacock, Hawthorn & Co., 168 Pa. 503; Jackson v. Wis. Tel. Co., 88 Wis. 243; Koelsch v. Phila. Co., 152 Pa. 350; Prichard v. Gas Co., 2 Pa. Superior Ct. 179; Winans v. Randolph, 169 Pa. 608; McCleary v. Frantz, 160 Pa. 535; Glassey v. Hestonville, etc., Ry. Co., 57 Pa. 172; Lake Shore, etc., Ry. v. Rosenzweig, 113 Pa. 519; Rudder v. Koopman, 22 Southern Rep. (Ala.) 601; Warn v. Davis Oil Co., 61 Fed. Rep. 631; Rose v. Transportation Co., 11 Fed. Rep. 438; Alexandria Mining, etc., Co. v. Irish, 16 Ind. App. 534; Reid v. R. R., 10 Ind. App. 385; Louisville, etc., Ferry Co. v. Nolan, 135 Ind. 60; Penna. Co. v. Congdon, 134 Ind. 226; Powell v. Penna. R. Co., 32 Pa. 414; Penna. R. Co. v. Ogier, 35 Pa. 60; R. R. v. McClurg, 66 Pa. 294.

*S. F. Bowser,* with him *A. L. Bowser,* for appellee.—In actions for negligence, the burden of proof is upon the plaintiff.   The law will not presume it for him: McCully v. Clarke & Thaw, 40 Pa. 399; Whitaker v. Delaware & Hudson Canal Co., 87 Pa. 34; Federal St. & Pleasant Valley Ry. Co. v. Gibson, 96 Pa. 83; Baker v. Fehr et al., 97 Pa. 70; Allen v. Willard, 57 Pa. 374; Leidy v. The Quaker City Cold Storage and Ware- house Co., 180 Pa. 323; P. & R. R. R. v. Hummell, 44 Pa. 377.

PER CURIAM, November 7, 1898:

The question whether there was any negligence on the part of the defendant in conducting the shooting of the plaintiff's well was fairly and correctly left to the jury under proper in-

structions by the court below.  The jury found a verdict in favor of the defendant and thereby determined that the defendant was not guilty of negligence.  As there was no contract of guaranty that the well should be shot without any resulting injury, there could be no liability resulting from a breach of contract.  As there was no other source of liability except these two the plaintiff could not recover.  The assignments of error are all without merit and must be dismissed.

Judgment affirmed.