## Dominick Baliutis, Appellee, v. G. H. Hammond Company, Appellant.

## Gen. No. 16,477.

NEGLIGENCE—*what essential to application of doctrine res ipsa loquitur.* In order that the doctrine *res ipsa loquitur* may be availed of the plaintiff must aver that the causal act or omission was one that a reasonably prudent person in the defendant's place would have fore-seen might cause the injury.

Appeal from the Circuit Court of Cook county; the HON. E. M. MANGAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed. Opinion filed April 19, 1912.

F. J. CANTY AND J. C. CLOW, for appellant.

CYRUS J. WOOD AND THEO. PROULX, for appellee.

Baliutis v. Hammond Co., 170 Ill. App. 598.

MR. JUSTICE CLARK delivered the opinion of the court.

Judgment was rendered in favor of the appellee and against the appellant for $500, on account of personal injuries received by the former June 25, 1904.

The only testimony in the record is that of the plaintiff (appellee) himself. This testimony was given through an interpreter, and it is very hard from it to get a correct idea of the facts in the case.

The defendant company owns and operates a slaughter house at the Stock Yards in Chicago. Part of its business consists of putting up meat in cans for the market. After the meat is placed in them the cans are sealed and put in hot water, thus cooking the meat. This is done in a room called the cooking room, which is fitted up with rows of iron vats containing water heated by coils of steam pipes. The filled cans are put in pans, several of the pans being placed in each vat. Over each row of vats is a track, upon which there is a contrivance resembling a trolley. From this trolley are suspended a block and tackle in the form of an endless chain, on the lower end of which is a hook. Each pan is provided with a bail consisting of a chain, in the middle of which is a ring. The trolley, with a hoisting device attached, is moved along the rail or track above the line of vats. The ring of the bail is placed on the hook of the hoisting device, and after the meat is sufficiently cooked the pans are lifted from the vat.

Plaintiff had been for a year prior to the accident engaged in the work of cooling and piling the cans. He claimed he had never done the work of taking the pans from the vats before the occasion on which he was injured. On that day the foreman showed him how to do the work by taking out one pan from a vat. The foreman then told the plaintiff there were two pans in the next vat and three in the third vat to be taken out. The foreman left and the plaintiff proceeded with the work.

The plaintiff's description of his manner of doing the work is as follows:

"After the foreman went away I went over to the next two pans and took them out in the same way. I took the hook and then I fished around in the water and then I hooked it on the pulley and I began to pull. I took this away and let the water go out and then I went to the third tank and then again I fished for the rings and after I hooked it on to the pulley I began to pull and I pulled it up about a foot higher than the tank and all of a sudden it fell into the water and when it fell into the water it splashed my face.

"The foreman pulled out one pan while he was showing me. In the second tank there were two pans that I pulled out. I pulled out them two alone and when I came to the third tank I pulled out three pans and when I hoisted them about a foot high, it broke off and splashed right into the water."

At this point in his testimony the question was asked of the plaintiff: "When the three pans were there, then what happened?" Answer: "The end of the pan broke off and fell into the water." There was a motion to strike out this testimony on the ground that there was no allegation in the declaration that any part of the pan broke. There was no ruling on the motion at this time, and the witness then proceeded as follows: "At the corner where it is hooked on, the pan broke off; that is, it didn't break out but it ripped out. There is a hole there and the chain is connected to that and it broke out and fell in. It broke out in the pan. I didn't see exactly how it happened, but I noticed from the corner it let go and fell. The corner broke and the pans fell into the water." The Court: "Ask him what let go of the corner. He said it let go; ask him what let go." Answer: "I do not know whether it was the pan broke. I didn't see it." The court then directed the witness as follows: "Tell what you saw the pan do, and the chain do and the pulley do." And the witness answered: "Well, while the

chains were connected and when I was hoisting it, I don't know whether the pan broke out or not but it fell and splashed on me." The court then directed that the witness be asked what he saw break, if anything. The witness then replied: "The pan broke." The Court: "Ask him if he saw it break." The witness: "When it splashed on me I didn't see anything." Thereupon the court sustained a motion to strike out the testimony of the witness that the pan broke, and directed the jury to disregard his answer in respect thereto.

On cross-examination the witness testified as follows:

"After I took those two pans out I went on to the next vat. There were three pans in that vat. Just the three that I was taking out. In taking out the three pans I hooked the chain up on the hook just the same as I had the ones at the other vat. I took the chains out of the water and hooked the ring over the hook there that hung at the top of the vat. Above the vat is a pulley with a hook on it; that hook and pulley with a rope of chain on it is fixed so that you can move it along above the top of each vat. I was using that same hook and pulley and chain that I had used at the first vat and at the second vat. After I had hooked the rings on this hook, ready to pull a pan out, all I had to do was to take hold of this rope here by the pulley and just keep pulling down. It was an endless chain. When I was pulling the three pans out, I had hooked the chains on that were fixed to the bottom pan. I did not do anything with the chains on the two top pans."

Plaintiff further testified to the effect that there were four chains attached to each pan, so that when the ring was attached to the so-called trolley a chain ran down to each corner of the pan from the ring; that none of the chains came loose; that he was pulling all of the three pans out of the vat at one time; that one side tipped over and fell.

The foregoing is practically all of the evidence in

the case relating to the manner in which the accident occurred.

At the conclusion of the plaintiff's testimony the defendant requested the court to charge the jury to direct a verdict for the defendant, on the ground that no negligence of the defendant had been shown. In the first count of the declaration the charge of negligence is that the defendant permitted the chains to be and remain unsafely attached to the pan, so that the chains became detached and separated from the pan and allowed it to fall. The second count is that the defendant was negligent in permitting one of the chains to become and remain defective and unsafe, so that it broke and allowed the pan to fall into the water.

There is no evidence in the record that the chain broke, and while the plaintiff testified that the pan broke, the court struck out the testimony in that regard because the plaintiff on further examination testified he did not see that the pan was broken. In other words, there was in the record no testimony tending to sustain either count of the declaration.

It is argued by the appellee,—but as we understand it, not insisted upon,—that the rule of *res ipsa loquitur* should apply. Can it be said in the present case that the fact that the accident happened necessarily shows that the defendant was guilty of negligence? It is not clear from the record whether the pans should have been lifted one at a time, nor whether or not the accident occurred because of the attempt of the plaintiff to lift all three of the pans at once. Each of the pans had a ring and chains upon it, and the foreman in showing the plaintiff how to do the work attached but one pan to the trolley.

In Diamond Glue Co. v. Wietzychowski, 227 Ill. 338, the court uses the following language:

"It is perhaps true that the doctrine of *res ipsa loquitur* is not applicable to an action of this kind by a servant against his master. (4 Thompson on Neg.,

Sec. 3909.)   In such a case the mere happening of the accident raises no presumption that it was caused by negligence of the master.   (Spring Valley Coal Co. v. Buzis, 213 Ill., 341.)   It may have no tendency to show that the injury was the result of negligence on the part of the master, or it may have resulted from one of the risks which the servant assumed, or have occurred through the negligence of fellow servants. In order to recover, the servant must go farther and aver and prove that the appliance was defective; that the master had notice thereof or knowledge, or ought to have had; that the servant did not know of the defect and had not equal means of knowing with the master; and that the defect was the proximate cause of the injury.''

In the case of C. & E. I. R. R. Co. v. Reilly, 212 Ill. 506, the Supreme Court had before it a case wherein the plaintiff had been injured by a timber projecting over the side of a flat car, the plaintiff being near the track of the defendant and on a highway as the train crossed the highway.   The Appellate Court of the First District held (Case No. 10974, opinion filed March 1, 1904) that the maxim *res ipsa loquitur* applied, and sustained a judgment for the plaintiff.   The Supreme Court, however, reversed the judgment and cited with approval Wabash, St. Louis & Pacific Ry. Co. v. Locke, 112 Ind. 404, to the effect that in this class of cases the plaintiff must aver that the causal act or omission was one that a reasonably prudent person in the defendant's place would have foreseen might cause the injury.

For the reasons stated, the judgment must be reversed.

*Reversed.*