agreement, express or implied, between the parties. After the building had been vacated by defendant's subtenant, the plaintiff's agent obtained from defendant the keys to the building and workmen entered thereon and for a period of about six weeks occupied several feet in the rear of the building in erecting the new wall, also considerable space along the side wall, which prevented the building, or a portion of it, being used for the purpose for which it was leased. The front entrance to the office was also boarded up and the agent retained the keys, without apparently giving the defendant any opportunity to use the building at all. The defendant sought to prove an oral agreement with plaintiff's agent to the effect that he, some time after the work had been commenced, accepted a surrender and released defendant from all further obligations to pay rent. The court, however, excluded the testimony on the ground that the agent did not have authority to bind the plaintiff by such agreement. I think the testimony bearing on this subject should have been admitted. Whether or not the agent had such authority was a question of fact. He had general charge of the building for the owner. He prepared the lease in question, and without consultation with the owner, and was "exclusively the managing agent" with reference to the building, not only as to leasing it, but as to repairs to be made.

As to the counterclaim, it was properly dismissed since the defendant did not offer any proof as to damages sustained.

The judgment and order appealed from, therefore, are reversed, and a new trial ordered, with costs to appellant to abide event.

INGRAHAM, P. J., and LAUGHLIN and SCOTT, JJ., concur. CLARKE, J., concurs in result.

---

CURTIS v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Division, First Department. December 31, 1913.)

1. MASTER AND SERVANT. (§ 278*) — INJURY — NEGLIGENCE — SUFFICIENCY OF EVIDENCE.

Evidence, in an action against a railroad for death of an engineer from derailment of his train in taking, at too high a speed a cross-over at an interlocking switch, *held* insufficient to show the claimed negligence, failure to set the danger signals in time to notify deceased to slow down.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 265*)—INJURY—RES IPSA LOQUITUR—APPLICABILITY OF DOCTRINE.

The doctrine of res ipsa loquitur, applying only where from the nature of the accident it would not ordinarily have occurred except from some negligence for which defendant is responsible, does not apply in an action against a railroad for death of an engineer from derailment of his train, in taking at too high a speed a cross-over at an interlocking switch, he having been advised that he was to make the cross-over, and the negligence being that of the towerman in not setting the danger signals in

time to notify him to slow down, or of himself in not seasonably noticing them and acting thereon.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

3. NEGLIGENCE (§ 121*)—RES IPSA LOQUITUR—EFFECT OF RULE.

Where the rule of res ipsa loquitur applies, the presumption only establishes a prima facie case for plaintiff, requiring defendant to meet it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 217–220, 224–228, 271; Dec. Dig. § 121.*]

4. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE TO REBUT PRESUMPTION.

The uncontradicted evidence of defendant, in an action against a railroad for death of an engineer from derailment of his train, in taking a cross-over at an interlocking switch *held* sufficient to rebut any possible inference of negligence, assuming that the doctrine of res ipsa loquitur applied.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

Appeal from Trial Term, New York County.

Action by Alice M. Curtis, administratrix, against the New York, New Haven & Hartford Railroad Company. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John M. Gibbons, of New York City, for appellant.

Ralph G. Barclay, of Brooklyn, for respondent.

McLAUGHLIN, J. There is but little dispute between the parties as to the material facts involved in this action. The plaintiff's intestate was employed by the defendant as a locomotive engineer. On the morning of July 11, 1911, he started with a passenger train, known as the "Federal Express," from New York for Boston. There were four tracks on defendant's road, designated 1, 2, 3, and 4—1 and 3 for west-bound trains and 2 and 4 for east-bound. When the Federal Express left New York it was on track 2. Attached to it was a car of the United States Fishery Commission, which the conductor was ordered to leave at Bridgeport, Conn. He communicated this order in the usual way to the intestate before the train left New York. In order to leave the car at the place designated it was necessary for the train to pass from track 2 to track 4, and the last cross-over which could be taken for this purpose, without running by and backing in, was at Burr road, a point near Bridgeport. A considerable time before the train reached Burr road, the train dispatcher at New Haven informed the towerman (the person who had charge of the switches at Burr road) that the Federal Express at that point was to cross from track 2 to track 4. This cross-over was what was termed a "low speed," that is, it was designed to be taken when the train was running not to exceed 15 miles an hour. The switch was of the interlocking type, and could not be thrown unless prior thereto the danger signals

had been set. These signals were three in number, the "distant," "home," and "dwarf." The distant signal was located about 2,200 feet, and the other about 200 feet west of the switch. The train reached the switch between 4 and 5 o'clock in the morning, and took the same while running at the rate of between 50 and 60 miles an hour. The engine and some or all of the cars were derailed and the intestate killed. The plaintiff brought this action to recover on the ground that his death was caused by the negligence of the defendant. She had a verdict of $6,000, and from the judgment entered thereon and an order denying a motion for a new trial, defendant appeals.

I am of the opinion the judgment must be reversed. The only theory suggested as the cause of the accident, upon which defendant could be held responsible, is that the signals were not set in time to notify the intestate to slow down in order to take the cross-over at the point where the train was derailed, and there is no evidence whatever to sustain this theory; on the contrary, the only possible inference, as it seems to me, that can be drawn from all the evidence is that the decedent lost his life by reason of his own negligence. The switch and signals connected with it were, as said, of the interlocking type—the highest and most efficient type known. They had been inspected prior to the accident, and worked properly. The switch could not be turned unless the signals were set, and the towerman testified that he set the signals upwards of 20 minutes before the wreck occurred; that he received orders to turn the switch some 12 minutes before the accident, and he could not have turned it if the signals had not been set. The witness Boyd, who was on the rear car of the Federal Express, testified that immediately following the wreck the "home" signal was then "red" and the "distant" signal at "yellow"—the colors they were intended to be when the switch was to be taken. The witness Stone also testified that a little later he saw the same thing. The towerman, therefore, was corroborated as to the setting of the signals, and the testimony of none of these witnesses was contradicted.

A wrecking train was sent from New York after the accident, and there was some testimony to the effect that when it arrived, some three hours later, sand was observed upon the track some 20 feet west of the switch, from which it is claimed the jury might have found that the signals were not set in time to warn the decedent, and that he attempted to stop his train when he saw the switch was turned. This inference is not justifiable. It can no more be inferred that the signals were not set than it can that they were and the intestate did not see them. The inference is just as strong one way as the other; in other words, if it be assumed that the accident was due either to the negligence of the engineer or the towerman, there is no presumption that it was the latter instead of the former.

[2, 3] But, even if it were proper to indulge in such inference, it would not justify the recovery, because the weight of the evidence clearly and conclusively established that the accident was not due to the negligence of the towerman. This seems to have been the view of the trial judge at the close of the case, when in denying a motion for a new trial, he stated he did not think the result of the accident was due

to the culpability of the towerman; that this was not the theory upon which the case was submitted to the jury; on the contrary, "it was a general situation represented by the doctrine of res ipsa loquitur." The case was tried and submitted to the jury upon that theory; in other words, all that the plaintiff was required to prove to make a prima facie case was the occurrence of the accident, the death of her intestate by reason thereof, and then it was for the defendant to prove, if it could, its freedom from negligence. The rule did not apply. The accident was due to the negligence of one of two servants of the defendant—the engineer or the towerman—and this rule has no application in determining upon which one the responsibility rested. Res ipsa loquitur applies only to cases where, from the nature of the accident itself, it is of such a character that it would not ordinarily have occurred except for some negligent act for which defendant is responsible. When such an accident occurs, then the jury may infer negligence, not from the accident alone, but from it and the attending circumstances. Cunningham v. Dady, 191 N. Y. 152, 83 N. E. 689; Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630; Benedick v. Potts, 88 Md. 52, 40 Atl. 1067, 41 L. R. A. 478. Where the rule applies, the presumption only establishes a prima facie case in favor of the plaintiff, and the defendant is then charged with the obligation of meeting such a case. Loudoun v. Eighth Ave. R. R. Co., 162 N. Y. 380, 56 N. E. 988; Lane v. New York Contracting Co., 125 App. Div. 808, 110 N. Y. Supp. 91. It would apply if plaintiff were suing for the death of a passenger on the train, because ordinarily such a wreck is caused by the negligence of the engineer or some person in charge of the tracks or cars, for which defendant would be responsible.

Van Inwegen v. Erie R. R. Co., 126 App. Div. 297, 110 N. Y. Supp. 959; affirmed 194 N. Y. 534, 87 N. E. 1128, cited by respondent is not in point, nor is it in conflict with the view above expressed. There, the engine passed from one track to another over an open switch, which was intended, and thought, to be closed. It was an unexpected movement of the train, and the person killed had no more to do with it than would a passenger. Here the movement of the train was not unexpected. The turning of the switch was the usual and necessary thing to do in order to permit the train to pass from track 2 to track 4, and the engineer had been advised that this change would have to be made in order to leave a car at Bridgeport.

[4] But if it be assumed that the doctrine of res ipsa loquitur did apply, then the judgment could not be sustained because defendant's uncontradicted evidence is sufficient to rebut any possible inference of negligence. The verdict to the contrary is against the weight of evidence.

The judgment and order appealed from, therefore, must be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.