EDWARD SCHROEDER, Respondent-Appellant, *v.* CITY AND COUNTY SAVINGS BANK OF ALBANY, Appellant, M. GERBER CONSTRUCTION COMPANY, INC., et al., Defendants-Respondents, and AL-MILE SHOE CO., INC., Impleaded Defendant.

Third Department, December 28, 1943.

208

*Murphy, Aldrich, Guy & Broderick,* attorneys (*Morris Simon* of counsel), for defendant-appellant City and County Savings Bank of Albany.

*La Verne Orvis,* attorney for plaintiff-respondent-appellant.

*Ainsworth & Sullivan,* attorneys (*John J. Conners, Jr.,* of counsel), for defendant-respondent M. Gerber Construction Co., Inc.

*John J. Scully,* attorney for defendant-respondent Sano-Rubin Construction Company.

HILL, P. J. Plaintiff recovered a verdict for personal injuries received in February, 1938, against the defendant bank, owner of premises on the northeast corner of South Pearl and Norton Street in Albany, and its contractor, a copartnership, Sano-Rubin Construction Company, and against the contractor of a tenant soon to occupy the premises, M. Gerber Construction Company, Inc. The Trial Judge denied the motion to set aside the verdict and dismiss the complaint as against the bank, but granted it as against the two contractors. The bank appeals.

The bank, acting through its contractor, constructed a barricade twenty to twenty-five feet in height, inclosing substantially all of the sidewalk upon each of the streets adjacent to the store building. During the small hours of the morning, a heavy but not unprecedented wind was blowing and the portion of the barricade which was parallel to Pearl Street fell, entangling trolley and telephone wires and creating an obstruction which plaintiff's employer, the United Traction Company, sought to clear through the efforts of plaintiff and a fellow worker, aided by members of the city police force. The portion

of the barricade parallel with Norton Street continued to stand, but was unstable and swayed in the wind. Plaintiff was injured while using a ladder which he had placed against the standing portion which he was attempting to make fast.

There were no exceptions to the main charge which occupies more than thirty pages of the printed record. An examination of the charge itself will disclose better the law of this case than to label it with the somewhat elastic term, *res ipsa loquitur*. The court charged:

" As to whether or not this barricade was built in a reasonably safe and proper manner, and whether it fell because of the operation and as a result of an act of nature, you will take into consideration the testimony which has been given here as to when it was erected, where it was located, its height and what weather conditions existed on the 28th day of February, 1938. Weather bureau records have been introduced in evidence showing the velocity of the wind at the time of the accident and prior thereto. Take all this evidence into consideration in determining whether or not that barricade was built in a negligent and careless manner and whether or not it was negligently and carelessly maintained.

" It is a well settled rule of law that if a person erects a structure upon or over a street in a city he is under obligation to take reasonable care that it shall not fall into the street and injure persons lawfully using the street. If a structure does fall and cause injury to a person lawfully on the street, the accident is *prima facie* evidence of negligence, or in other words a presumption of negligence arises.

" I do not mean nor do I wish you to conclude that this rule of law — namely, the falling of a structure into the street — relieves a plaintiff of a burden of proof nor does it create or raise a conclusive presumption in favor of the plaintiff. The fact of the occurrence and attendant circumstances merely furnishes some evidence which requires that defendant go forward with his proof and rebut negligence arising therefrom. This presumption may be overcome by evidence showing the cause of the occurrence and that the cause is attributable to some person other than the defendant for whose acts he is not responsible; and this presumption may also be overcome by showing the cause of the injury although attributable to a third person is of such a character that the defendant is not to be blamed in connection therewith and that such occurrence is in the nature of an accident unavoidable."

This is a correct exposition of the law as to the defendant bank, its counsel took no exception, and it is the law of the case. The Trial Justice, with praiseworthy patience, passed upon numerous requests from the floor, which occupy twenty pages of the record. Appellant bank relies upon a request and refusal to charge to present the so-called *res ipsa loquitur* issue. Its counsel requested: " I ask your Honor to charge the jury that the doctrine of *res ipsa loquitur* does not have any application in this case under the evidence."

This the court declined to charge, and an exception was taken. Had the request been granted, it would have been meaningless so far as the jury was concerned. Courts have found it necessary, with great frequency and considerable volubility, to explain this Latin phrase and its significance even to lawyers. The request did not raise the issue argued.

The defendant bank caused this dangerous structure to be erected and had arranged that the tenant's contractor would remove it and return the material to the bank's contractor. Plaintiff received his injuries after one portion of the structure big as the side of a small house, had fallen into the public street, damaging property and endangering the public, and when attempting to stay the remaining portion that was swaying in the wind, threatening further injury. The primary cause of his injury under the findings of the jury, was the negligently constructed barricade, and to suggest that he was injured because he did not place his ladder properly is to raise the trivial above the important.

The trial of this case began on October 19, 1942, and the jury came in on the early morning of the 29th. No witnesses were sworn on behalf of any defendant. Eight witnesses beside the plaintiff gave evidence in his behalf; of these, two were city employees who testified concerning the permits obtained in connection with the erection of the barricade, two officers of the bank, a lieutenant of police, and three traction employees. On behalf of the plaintiff the issues tendered were the ownership of the building, the work being done by the defendant bank within the barricade, which had not been completed at the time of the injury, the use being made of the barricade by the AL-Mile Shoe Company impleaded by the codefendants, the falling of the structure and the facts as to the accident itself.

The answer of each of the defendants pleaded that the others were negligent, and the answers of defendant bank and defendant M. Gerber Construction Co., Inc., brought in the Shoe Com-

pany for the purpose of ascertaining its liability, concerning which all stipulated as it now appears, but without the knowledge of the plaintiff, that the issues of law and fact between the three defendants selected by the plaintiff and the impleaded Shoe Company should be submitted to the Trial Justice to be determined by him the same as though a trial had been had before a jury, at which hearing each defendant might submit proof. The stipulation ends with this recital: " And that all of the issues both as to law and fact between all the parties except the plaintiff shall be decided and determined by the court." This was somewhat in keeping with the Civil Practice Act (§§ 193, 211-a) as interpreted by the Court of Appeals (*Fox* v. *Western New York Motor Lines, Inc.,* 257 N. Y. 305) wherein it is determined that a plaintiff may sue as many or as few defendants as he pleases in an action against joint *tort feasors,* leaving the *pro rata* contribution by defendants for later action.

This plaintiff, nearly six years after the accident, should not be required to suffer further delay which would almost amount to a denial of justice, to straighten out complicated issues that may exist between the defendants and concerning which no proof was offered upon the trial. He proved a rather simple case, and a jury has returned a verdict resolving all issues of fact in his favor. No exceptions were taken to the main charge and no requests were denied which raise an issue that requires a reversal.

BLISS, J. (dissenting). This is a negligence action for damages for personal injuries brought against the City and County Savings Bank of Albany, hereinafter referred to as the bank, M. Gerber Construction Company, Inc., referred to as Gerber, and a partnership known as Sano-Rubin Construction Company, referred to as Sano-Rubin, on the ground that each had been negligent in the construction and maintenance of a wooden barricade erected on the sidewalks of public streets in the city of Albany.

The principal question here involved is whether or not the doctrine of *res ipsa loquitur* applies. The case was submitted as a *res ipsa* case over proper exceptions. This rule is so familiar and has so frequently and recently been discussed that we need spend no time in its elucidation. (*Foltis, Inc.,* v. *City of New York,* 287 N. Y. 108.) As has been so often said, the difficulty is not in formulating the rule but in applying the formula.

The defendant bank was the owner of the premises at the northeast corner of South Pearl Street on the west and Norton

Street on the south, in the city of Albany, on which was located a brick building several stories in height. It leased the lower portion of this building to the AL-Mile Shoe Co., Inc., and agreed to make certain alterations as well as to permit the tenant to make other changes. The bank contracted with the defendant Sano-Rubin for its part of the alterations which were to be substantially completed prior to occupancy by the Shoe Company. The latter contracted with the defendant Gerber for the alterations which it was to make. The contract between the bank and Sano-Rubin, included the erection at the beginning of the work of a temporary board fence or barricade about twenty feet high on the sidewalk in front of the premises along South Pearl Street and around the corner for fifteen feet along the sidewalk on Norton Street. This barricade was to be left in place for the use of the tenant who upon completion of its alterations was to remove it and return the materials to the bank's contractor. Sano-Rubin began work early·in January, 1938. It erected the barricade and obtained a permit from the city. By February 9th, Sano-Rubin had completed all the work which it could accomplish until the tenant had performed its share of the alterations and on that date the tenant took possession of the premises, including the barricade which was then standing. A few days later a permit was obtained by the tenant's contractor Gerber to continue the use of the sidewalks on South Pearl and Norton Streets. The tenant and Gerber then proceeded with their alterations until shortly after midnight on February 28th when a high wind blew down the barricade on North Pearl Street. The portion on Norton Street remained standing, although it swayed with the wind and threatened to collapse.

The plaintiff, an employee of the United Traction Company, whose buses and trolleys ran along South Pearl Street in front of these premises, was called to the scene of the accident and with the help of a city policeman cleared the debris of the fallen portion of the barricade from the trolley wires and tracks on the South Pearl Street side. Then, with another traction company employee named Sherman he attempted to secure the portion of the barricade which he had noticed swaying back and forth and which was still standing on the Norton Street sidewalk and extended about four feet beyond the building line on the South Pearl Street sidewalk. Sherman placed the upper end of a timber against the barricade with the bottom end braced against the southerly curb of Norton Street which was only about twelve feet wide. The plaintiff took a light ladder from

his repair truck, stood it against the barricade with the foot about three feet from the bottom of the barricade and climbed it, intending to nail a cleat on the barricade just above the top of the brace. While standing on the ladder near its top holding on to the prop with one hand to steady himself and with the hammer also in that hand, plaintiff attempted to nail the cleat but the barricade began to sway and shake as if a hard wind hit it and the plaintiff and ladder both fell to the pavement. The barricade remained standing on Norton Street and at no time did this portion fall. Sherman who was holding the brace from the under side with his back to the barricade, said he saw the barricade sway and the brace move up and down against it and next saw the plaintiff on the pavement. Divested of details, this was the plaintiff's case.

The appellant bank urges that the plaintiff was a volunteer to whom the defendant owed no duty save to abstain from willful negligence. That question has been factually determined in plaintiff's favor and we must assume that plaintiff was rightfully there. The traction company legally occupied the highway. It was a viable use. Its employees might lawfully do within the highway that which was reasonably necessary or incidental to such occupation and to the duty of the company to keep its transportation lines in operation. These employees were not trespassers. As between the occupancy of the traction company and that of the defendants, the former would take precedence.

It was a question of fact for the jury whether the swaying barricade threatened to damage traction company property or interfere with the operation of its lines and the plaintiff's efforts to prevent such harm, the normal efforts of one in his position. Upon this record the plaintiff was not a volunteer or officious meddler and we cannot say as matter of law that the staying of this barricade was not in the interest of his employer and the normal reaction of an employee of the traction company.

We go now directly to the applicability of the rule of *res ipsa loquitur*. It is a rule of evidence only and one of the essential elements of its application is that the thing which causes the injury must be under the exclusive control of the defendant. It does not apply where there are multiple causative agencies, of one of which at least plaintiff has control, because then the basis for the rule is not present. Plaintiff was injured when he fell from a ladder which his own employer had furnished and over which these defendants had no control whatsoever. The portion of the barricade which he was attempting

to secure did not fall. Whether his fall was caused by the swaying of the barricade in the wind, his losing his balance, the slipping of the ladder, either at top or bottom by his having placed the bottom of the ladder too close to the bottom of the barricade, or by some defect in the ladder itself, is not known. All are possible causes. Some are probable causes, such as a defective ladder, the ladder being too nearly vertical, or a loss of balance, and it was as likely to have caused the fall as the swaying of the barricade. Only the barricade was under control of the defendants and plaintiff knew that the barricade would sway in the wind before he attempted to stay it. The reason why the ladder and plaintiff fell was not exclusively within the knowledge of defendants and it does not appear unusual that a ladder should fall when so placed or that the plaintiff fell when so situated. The agency which produces the injury must be within the exclusive possession, control and oversight of the person charged with negligence. (*Slater* v. *Barnes,* 241 N. Y. 284.) If the accident may be due to the negligence of the plaintiff as well as that of the defendant, the rule of *res ipsa* does not apply. (*Curtis* v. *N. Y., N. H. & H. R. R. Co.,* 159 App. Div. 757.) Where plaintiff furnishes a part of the apparatus which causes the injury the rule does not apply. (*Carter Oil Co.* v. *Independent Torpedo Co.,* 107 Okla. 209.) All agencies contributing to the mishap must be under control of the defendant. (*Murray* v. *Great A. & P. Tea Co.,* 236 App. Div. 477.) Here the probabilities are as great that the accident was due to some act of plaintiff or some fault with the instrumentalities furnished by him as that it was the swaying of the barricade. Even assuming that the latter contributed, nevertheless the other elements may also have been substantial factors, and so the rule cannot apply. (*Galbraith* v. *Busch,* 267 N. Y. 230.) Finally, this barricade was erected by Sano-Rubin under contract with the bank and supervision of an architect. It continued to be used by the tenant and its contractor. Any one of the three defendants in this case may have done something to weaken it so as to cause it to collapse and under such circumstances as to relieve the others. "When either one of two persons, wholly independent of each other, may be responsible for an injury, the case is one for affirmative proof and not for presumption." (*Hardie* v. *Boland Co.,* 205 N. Y. 336.) Under all these circumstances it was improper to place on defendants the burden of explaining the accident. Thus the judgments and orders should be reversed as to the defendant bank and a new trial granted.

We must now consider the position of the defendants Sano-Rubin and Gerber. The duty of one who obstructs a portion of a public highway with a permitted purpresture is to exercise reasonable care for the protection of the traveling public in the erection and maintenance of the structure. This duty is non-delegable. (*Boylhart* v. *DiMarco & Reimann, Inc.,* 207 N. Y. 217.) There is no question here as to the obligation of the bank nor, in the first instance, of its contractor Sano-Rubin. The latter claims that its obligation ended when the tenant and the tenant's contractor took possession of the premises and continued the work. The barricade, however, was erected by Sano-Rubin and it continued to be an obstruction in the public highway until finally removed. That the tenant or its contractor was under obligation to remove the obstruction, did not relieve the ones who erected it, especially if it was faulty when turned over to the tenant. The obligation of Sano-Rubin was not terminated until the obstruction which it had placed in the highway was finally removed therefrom. So, too, with the defendant Gerber. As one in possession of the premises, including the barricade, it was in the same position. It, too, owed the traveling public the duty, which it might not delegate to another, of seeing that this barricade was not unsafe and of doing whatever was necessary to render it reasonably safe. The action should be retried and upon the new trial the plaintiff will have another opportunity to establish the negligence of the defendants by the usual rules without a charge which places upon the defendants the burden of explaining how the accident happened. Therefore, he should have the right, under proper rules, to show, if he can, that all three of the defendants were negligent and he himself free from negligence which contributed to the accident.

In view of the statement of the Presiding Justice assigning delay as a ground for affirmance, it should be remembered that we have no knowledge as to who caused such delay. The action was started in December, 1938, and the pleadings, original, amended and supplemental, not completely served until November, 1941. In the meantime plaintiff who is entitled to benefits under the Workmen's Compensation Law is apparently receiving them from his employer. Upon the trial this employer was properly subpœnaed to produce the statements of plaintiff on his claim for compensation. The employer then applied to the Trial Justice to quash the subpœna upon the ground that it was an improper interference with the operation of the corporation which was in Federal receivership. This application was granted. Under the Workmen's Compensation Law this

employer has an interest in this action and it should have been compelled to produce these records.

I vote to reverse.

CRAPSER and HEFFERNAN, JJ., concur with HILL, P. J.; BLISS, J., dissents in an opinion; SCHENCK, J., taking no part.

Judgments affirmed, with costs.