COSDEN et al. v. WRIGHT.

No. 33350. Oct. 4, 1949.
Rehearing Denied Nov. 15, 1949.

*211 P. 2d 523.*

212

Simon, Wynn, Sanders & Jones, of Fort Worth, Tex., and Champion, Fischl & Champion, of Ardmore, for plaintiffs in error.

Deupree & Linn, of Oklahoma City, for defendant in error.

GIBSON, J. Action by J. G. Wright against E. N. Cosden, and others, trustees of the Cosco Oil Company, a dissolved corporation, to recover damages sustained in the partial destruction by fire and explosion of plaintiff's truck while natural gasoline was being unloaded therefrom at the refinery of defendant company.

It is alleged that in the petition that plaintiff is the owner of a fleet of trucks used in the transportation of petroleum products. That on June 4, 1943, pursuant to an agreement with Cosco Oil Company, then existing as a corporate entity, plaintiff was engaged in hauling casinghead gasoline from Madill, Oklahoma, to the refinery operated by Cosco Oil Company near Wynnewood, Oklahoma. That while a truck was being unloaded an explosion and fire occurred which partially destroyed the truck. That at the time of such unloading the truck and all facilities used were under the exclusive control of said Company. That the casinghead gasoline is a highly volatile and explosive substance when it or the vapor therefrom come in contact with a spark or flame, but that, with the use of due care, it can be safely handled. That the explosion and resulting fire were due to the neglect of the company to exercise proper care in the unloading. For answer defendants deny generally and plead contributory negligence.

No specific act of negligence is alleged as the proximate cause of the injury, and it is evident that the petition was framed and plaintiff's case presented upon the theory that the doctrine of res ipsa loquitur was applicable and that the inference of negligence, claimed to arise therefrom, constituted the basis of plaintiff's action. The cause was submitted upon that theory to the jury, which returned a verdict for plaintiff for which judgment was rendered. Defendants appeal.

For the purpose of review we deem it necessary to consider only the errors assigned on the court's refusal to sustain defendants' demurrer to the evidence and their motion for a directed verdict, both of which involve the applicability of the doctrine of res ipsa loquitur to the issue.

For the transport and delivery of the shipment of gasoline, the plaintiff used three trucks. Two of the trucks had been unloaded and the unloading of the third truck was in progress when the initial explosion and fire occurred.

While the method to be pursued in the matter of the unloading was subject to the direction of the company's representatives, the accomplishment thereof was effected by the combined efforts of such representative and the drivers in charge of the trucks.

The unloading is uniformly accomplished by means of a hose connec-

tion, between the truck and the receiving tank, through which the gasoline is caused to flow by air pressure injected into the top of the truck tank. The connections had been made, the air applied and the unloading begun and continued for about ten minutes when the company representative and the plaintiff's drivers left the task temporarily. Within a very few minutes after their departure, the initial explosion and flame occurred. No one witnessed the explosion or the conditions that obtained immediately preceding it. The flame was at the rear of the truck and was consuming gasoline coming from the truck in the area of the hose connection when first noted. The effect of the fire was to destroy the hose and render molten the valves of the truck.

B. O. Underwood, manufacturer of the truck and who repaired the damage thereto, called as a witness for the plaintiff, testified that in making the repairs new valves were installed. That the condition of the original valves as a result of the fire alone would have required it, and that he was unable to say whether any of the valves were or were not defective preceding the fire. He further testified that he had known such valves to spring a leak and he had repaired them therefor, but that he considered it improbable that the valves on the truck, which was manufactured in April or May of 1943, would spring a leak in so short a time.

E. I. Shilling, who was called as an expert witness by the plaintiff, testified that gasoline trucks have been known to catch fire upon the highway without anyone knowing the cause of it. That it is ordinarily claimed that a spark or flame caused it. That there must be a spark or something to ignite the fumes. That if you have the right kind of truck and get the proper test, it is not so likely to have the fire, but that like anything else it is possible to spring a leak. That it has to have a vent. That by being watched and guarded against, it can be avoided unless it is one of those things no one knows

anything about. That by reason of the fumes being heavier than air, they have a tendency to settle to the ground and spread unless dispersed by wind. That when ignited the flame will flash back to the point of escape. The witness was questioned and he replied as follows:

"Q. You don't know what happened in this case? A. No, I was not there. Q. This gas escaped from this truck, either the valves burst or sprung a leak, or something else sprung a leak or there was a static electric flash, we know that? A. Yes, sir."

The testimony of these witnesses is recited, not for the purpose of establishing as a fact the greater probability of leakage from the truck than from the hose which was supplied by the company, but to show not only that the truck was an essential instrumentality to the unloading, but that the company's control thereof at the time could not impose upon it the duty to exercise that care which was required to establish the fitness of such instrumentality and that the duty in such respect devolved upon the plaintiff. And we think that a recognition of such duty is to be found in the following excerpt from plaintiff's testimony:

"Q. Now based on that experience, would you say that if a fire or explosion, in connection with unloading of natural gasoline, would you say it would be a usual or unusual occurrence if the unloading was made and attended and watched by someone in charge? A. In handling gasoline there are certain principles that are basic. Just like pumping up a tire, you have to do certain things and the elements have to be understood and all of the things necessary must be done or a fire might occur. May I change your question just a little bit, you said in unloading, I want to say in hauling natural gasoline or any inflammable material, such as I haul, the first thing you must have a full load because there is danger on the highway to a partial load in the compartments, because if you have a partial load, there is a chance from continued sloshing or batting on the compartment

walls to break them loose inside of the truck. In loading the material, we have to fill it up and if there is air in the vessel, it has to be released to get a load, and in unloading you force it back into the vessel with air in order to get a load back out of the truck. In unloading this material, the line to the vessel that leads out to the storage must be open, then if that line is open, and if there is less pressure on the vessel, we are going into, than in our truck, the material will easily empty. The line to the storage, the outlet line must be opened first then the air applied at the top of the tank, or the vessel containing the material, and if those things are followed, unloading will naturally follow in a safe way, but if any of these elements are neglected, the essential elements that enter into the loading or the unloading, if any are left out, including the static chains, there is a possibility of something taking place. If the material is allowed to escape into the air, the material from this vessel or any other vessel that might be near or that had been there, containing such materials and the materials had been allowed to escape, if it should come in contact with a spark or flame, such as from an electric motor, there is a possibility of a fire."

That the method pursued in the unloading was in all respects correct is attested by plaintiff's witnesses, the drivers who participated therein.

The liability, if any, of the company must rest upon the violation of a legal duty owing to the plaintiff. And, to be entitled to relief on account thereof, the plaintiff must sustain the burden of proving the existence of such duty and its violation as well as the injury suffered by reason thereof.

Under the facts, the company was obligated to the plaintiff to exercise care in the matter of unloading the gasoline. And this involved not only care in the selection of the method to be pursued, and in the exercise thereof at the moment, but also that care the exercise of which was necessary to discharge its responsibility for the fitness thereof of the appliances provided and used by it. The obligations of plaintiff to the company were in all respects the same except as to the method pursued from which he was absolved by the company.

Plaintiff has neither pleaded nor by direct evidence sought to prove the particular duty or the manner of its breach as the proximate cause of the injury. His right to recover is sought to be established by circumstantial evidence, and there is invoked and relied on for the purpose the rule of evidence known as res ipsa loquitur.

With reference to that rule it was said in Isaac Hughes v. Atlantic City & Shore Railroad Co., 85 N. J. L. 212, 89 Atl. 769, L. R. A. 1916A, 927:

". . . The importance of the rule which finds expression in that maxim is found in the province of the trial judge and not in the province of the jury. He is called on in the first instance to say whether there is any evidence of negligence to go to the jury; in the absence of direct evidence, he may, in cases where the maxim applies, hold that the circumstances are such as will, unexplained, permit the jury to draw the inference of negligence; . . ."

The sufficiency in law of the evidence to afford an inference of negligence was a question for the court to determine before submission of the issue to the jury.

In Carter Oil Co. v. Independent Torpedo Co., 107 Okla. 209, 232 P. 419, we set forth certain basic principles that have direct application here. Therein we quoted from Thompson on Negligence (vol. 8, sec. 7635, pp. 1022-1024):

"The rule of 'res ipsa loquitur' is a rule of evidence only. It takes more than the mere happening of an accident to set the rules in operation. It must be shown that the act was of such a character, as, in the light of ordinary experience, it is without explanation, except on the theory of negligence. The thing causing the accident must have been under the con-

trol of the defendant or his servant at the time of the accident. The doctrine proceeds on the theory that it is easily within the power of the defendant to show that there was no negligence on his part . . . . Neither does the doctrine apply where the facts shown are equally consistent with the hypothesis that the injury was caused by the negligence of the injured person or by that of defendant, or by both combined."

And from the same author (vol. 1, p. 16, sec. 15):

". . . Where the thing is shown to be under the management of the defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

And as an illustration of the application of the rule there is quoted from Chiles v. Fort Smith Commission Co., 139 Ark. 489, 216 S. W. 11, 8 A. L. R. 493, as follows:

"The maxim 'res ipsa loquitur' is applicable to the wrecking of a building to the injury of an employee of a tenant by an explosion from unknown cause, where all of the fixtures and appliances containing the gas and ammonia in the building, which alone might have caused the explosion, are exclusively under the control of the owner of the property, against whom the action is brought."

From these pronouncements it clearly appears that the circumstances must not only warrant the inference that the explosion was the result of negligence, but also that the negligence was the negligence of the company. Such can be accomplished only where it appears that the company was solely responsible for the performance of all the duties of which the breach of someone must have been the proximate cause of the explosion.

In Carter Oil Co. v. Independent Torpedo Co., supra, the oil company sued the torpedo company for damages caused by the premature explosion of a shell of nitroglycerine while being lowered by the latter into the well of the former. We said:

"It appears settled that in order to recover by reason of the rule of res ipsa loquitur, plaintiff must aver and prove such a state of facts as that the instrumentalities which have occasioned the injury were at the time under the control and management of the defendant; that the injury was caused by a failure of defendant's appliances to properly function, and that the cause of such failure is wholly in the power of defendant to prove, and beyond the power of plaintiff so to prove."

And, in holding the rule not applicable, we declared:

". . . But this doctrine is applied only where the instrumentalities out of the use of which the accident occurred are wholly within the control of the party charged with negligence. In this case it is true that the shell or torpedo was the instrumentality of the defendant and that the defendant had absolute control over the handling of the same. The nitroglycerine was in the exclusive charge of the defendant and the apparatus for lowering the shell filled with nitroglycerine was also in defendant's charge and owned by it. The plaintiff had prepared and furnished the receptacle into and through which this shell or torpedo should be lowered. The well partly cased and partly not cased became an integral part of the entire apparatus necessary to accomplish the purpose of the parties, and when the plaintiff furnishes a part of the apparatus and the defendant furnishes the remainder, the doctrine invoked here cannot be made to apply, but it devolves upon the plaintiff to allege and prove negligence of the defendant, either as to its apparatus or the use thereof, and that such negligence was the proximate cause of the injury. The authorities we think, are not at variance upon this proposition."

It is manifest from this statement that the management and control of

the instrumentalities required by the rule means something more than the actual possession and use at the time of the accident and that it must include that previous management and control which is responsible for the fitness of the instrumentalities for the intended use. It is the fact that the torpedo company did not have that control which could fix upon it responsibility for its fitness, and therefore the rule was not applicable. The same result must necessarily follow where the responsibility for the fitness of one of the instrumentalities rests on the plaintiff which is the situation in this case. In the cited case, and again in Eastern Torpedo of Ohio Co. v. Shelts et al., 121 Okla. 129, 247 P. 974, we said:

". . . Where there are several instrumentalities used in doing the thing out of which the accident arose, some of which were under the control of defendant and others of which were under the control of the complaining party, the doctrine of res ipsa loquitur will not apply where the accident may reasonably have occurred by reason of defects in the instrumentalities under plaintiff's control."

So far as material here, the truck was not under the control of the company and for that reason alone the rule, res ipsa loquitur, can have no application. Under the evidence the leakage of gas may be attributed as reasonably to a defect in plaintiff's tank as to a defect in the company's hose and such fact constitutes a further reason why said rule cannot be held to apply.

It is our opinion that the trial court should have sustained the motion for a directed verdict. Therefore, the judgment is reversed and cause remanded, with instructions to dismiss plaintiff's action.

DAVISON, C. J., and CORN, LUTTRELL, and JOHNSON, JJ., concur. HALLEY and O'NEAL, JJ., dissent.