No. 37,736

THE TRAVELERS INSURANCE COMPANY, a Corporation, *Appellee,* v. CHARLES HULME, Doing Business As the GREAT BEND MOTOR COMPANY, *Appellant.*

(213 P. 2d 645)

Opinion filed January 28, 1950.

*Phil H. Lewis,* of Topeka, argued the cause, and *R. C. Russell* and *Isabel Obee,* both of Great Bend, and *T. M. Lillard, O. B. Eidson,* and *James W. Porter,* all of Topeka, were with him on the briefs for the appellant.

*Tudor W. Hampton,* of Great Bend, argued the cause, and *S. P. Blackburn, Barton Carothers* and *Ed. R. Moses,* also of Great Bend, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ARN, J.: An insurance company brought this action against a garage operator to recover for the loss of a Buick automobile destroyed by fire while said automobile was in the garage operator's place of business undergoing repairs to its gasoline line and tank. The defendant garage operator's demurrer to plaintiff's petition was overruled by the trial court and defendant appealed.

The petition contained only general allegations as to defendant's negligence and the trial court overruled a motion to make it more definite and certain by setting forth in what manner the defendant or his agents and employees failed to exercise proper care in handling the automobile, and by stating the particular acts of negligence relied upon by plaintiff.

An amended petition was subsequently filed in order to meet other requirements of pretrial motions, but no change was made in the allegations as to defendant's negligence, plaintiff contending its petition was drawn upon the doctrine of *res ipsa loquitur*. The amended petition alleged that the plaintiff insurance company issued a policy of automobile fire insurance upon a certain Buick automobile belonging to the H. Drilling Company, and that by the terms of the policy the insurance company paid its assured, the H. Drilling Company, in full for its loss, and was then and there subrogated to any and all rights of assured to recover against third persons for damage by fire to the Buick automobile. It was further alleged that the assured, the H. Drilling Company, delivered the Buick to defendant's garage and requested that defendant replace, recondition or repair the gasoline tank and gasoline lines because they were believed to contain a syrup substance; and that from and after such delivery, the Buick automobile was in the exclusive and sole possession and control of defendant, his agents, servants and employees. The amended petition continues as follows:

"7. That on or about the 11th day of November while the defendant, his agents, servants, employees or representatives were doing work upon said automobile, and at a time when they were draining gasoline from the gas tank into an open container, a fire suddenly occurred originating near the rear end of said automobile, and before said fire was extinguished the rear end, body, interior, cowl, instrument panel and wiring and other parts from the motor back on said automobile were burned and demolished.

"8. That the plaintiff and Hissom Drilling Company, a Corporation, first learned of said fire and resulting damage at the time of calling at defendant's garage and repair shop for the return of said car.

"9. That at the time of the occurrence and resulting damage, to said automobile, the defendant, his agents, servants, employees, and representatives were in the sole and exclusive control and management of the vehicle, garage and repair shop in which said vehicle was located and all of the machinery and contents thereof; and had complete and exclusive supervision, control and management of all operations and work done on said vehicle and within said garage and repair shop.

"10. That the defendant, his agents, servants, employees, and representatives have performed similar operations in the operation of said garage and

repair shop and a fire such as occurred in this instance does not ordinarily occur if the management thereof uses proper care.

"11. That the fire and resulting damage to said automobile was the result of negligence on the part of the defendant, his agents, servants, employees or representatives in the management and operation of said garage and repair shop and repairing of said automobile; and that such negligence was the sole, direct and proximate cause of the damage to the said Buick automobile.

"12. That the plaintiff and Hissom Drilling Company, a Corporation, were neither negligent nor in any way at fault and did not contribute to the causing of the fire and the resulting damage to said automobile.

"13. That the plaintiff and Hissom Drilling Company, a Corporation, were without knowledge as to the specific act or acts of negligence on the part of the defendant, his agents, servants, employees and representatives which caused the fire and resulting damage to said automobile and are unable to determine said negligent act or acts, and the same are inaccessible to the plaintiff, and the Hissom Drilling Company, a Corporation; that the defendant, his agents, servants, employees and representatives know, or should know or have the means of ascertaining the true cause of the fire and resulting damage to said automobile and the negligent act or acts are peculiarly within the knowledge of the defendant, his agents, servants, employees or representatives.

"14. That by reason of the negligence of the defendant, his agents, servants, employees and representatives the said Buick automobile was damaged and depreciated from the reasonable market value that it had just prior to the fire and resulting damage to the extent of Six Hundred & No/100 Dollars ($600.00) which amount this plaintiff was required to pay the Hissom Drilling Company, a Corporation, under the contract of insurance and became subrogated to the rights of Hissom Drilling Company, a Corporation, for its action against said defendant.

"Wherefore, plaintiff prays judgment against the defendant for the sum of Six Hundred & No/100 Dollars ($600.00) and the cost of this action and such other relief as may be just."

Ground for the demurrer was that the petition failed to state a cause of action.

Appellee concedes that its amended petition was drafted upon the doctrine of *res ipsa loquitur*, and does not now contend that the amended petition, having survived the attack of being indefinite and uncertain, states a cause of action based upon any specific acts of negligence. In fact, appellee contends that it was not necessary to state any specific acts of negligence because the petition was based upon the *res ipsa loquitur* doctrine. Both appellant and appellee agree that the sole question now to be determined is whether the amended petition states facts sufficient to constitute a cause of action under the doctrine of *res ipsa loquitur*.

Appellant contends that under the authority of *Emigh v. Andrews,*

164 Kan. 732, 191 P. 2d 901, and authorities cited therein, the amended petition in the instant case did not state a cause of action under the doctrine of *res ipsa loquitur*. Appellee, on the other hand, relies principally upon *Truhlicka v. Beech Aircraft Corp.*, 162 Kan. 535, 178 P. 2d 252, and *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 P. 2d 599, to support his contention that his petition states a cause of action under that doctrine.

Before attempting an analysis of the foregoing cases, let us consider the application and effect of the *res ipsa loquitur* doctrine. The doctrine is not a substantive rule of law—it is a rule of evidence. Literally the term means "the thing itself speaks" (*Emigh v. Andrews*, supra; *Mayes v. Kansas City Power & Light Co.*, supra; *Stroud v. Sinclair Refining Co.*, 144 Kan. 74, 76, 58 P. 2d 77; *Starks Food Markets, Inc., v. El Dorado Refining Co.*, 156 Kan. 577, 134 P. 2d 1102; 38 Am. Jur. 994). The doctrine has no application to proximate cause—or perhaps we should say no application to the initial fact, or the fundamental or foundation fact which caused the injury or damage. The doctrine will permit an inference or presumption that the known act—or foundation fact—which produced the injury (proximate cause) was a negligent act, but it will not permit such an inference or presumption as to just what foundation fact did produce the injury—or, in other words, as to what act was the initial cause of the damage. Thus the doctrine cannot be applied where the thing which actually caused the injury or damage is unknown; but when it is known and disclosed and relied upon as the basis of the damage or injury, the application of the doctrine of *res ipsa loquitur* will infer negligence in the doing of the *thing* or in the commission of the *act* (45 C. J. 1212; *Emigh v. Andrews*, supra, and cases cited therein at page 735). We said in the last cited case that the inference arises only from the foundation fact after it is known and established, and cannot act to supply a foundation fact.

In the Emigh case, the petition alleged in substance that plaintiff's wheat field was burned when defendant's truck was driven through it; that the truck was under the exclusive control of defendant and a fire broke out at a point in the wheat field immediately after defendant's truck passed said point; that no other persons or vehicles were near that point and when vehicles are properly and carefully operated, such fires ordinarily do not occur; that defendant owed plaintiff the duty to operate the truck carefully

through the wheat stubble. It further alleged that plaintiff could not state the specific act or acts of negligence of defendant which caused the fire, but that defendant's negligence was the proximate cause of the fire and damage to the wheat. In affirming the trial court's order sustaining a demurrer to the Emigh petition, we said:

"While there is conflict in the decisions relative to the application of that doctrine there is no dispute relative to the meaning of the words *res ipsa loquitur*. They simply mean 'the thing speaks for itself.' And that means the *thing* or *instrumentality* involved speaks for itself. It clearly does not mean the *accident* speaks for itself. It means that when the initial fact, namely what thing or instrumentality caused the accident has been shown then, and not before, an inference arises that the injury or damage occurred by reason of the negligence of the party who had it under his exclusive control. The inference of negligence arising from the initially established fact compels the defendant, in order to relieve himself of liability, to move forward with his proof to rebut the inference of negligence."

.   .   .   .   .   .   .   .   .   .   .   .   .

"Here the truck, under the circumstances alleged, is the instrument which is supposed to speak for itself. Did it cause the damage? The petition does not allege it did. The petition does not allege the truck started the fire. It does not even allege it emitted sparks. Until it is known what thing caused the damage how can it be said 'the thing speaks for itself'? This petition instead of alleging the truck started the fire at best alleges facts which raise only a presumption the truck caused the damage. On the mere *presumption* of the initial cause of the fire the further *inference* is sought to be drawn that the truck was defective or improperly operated. Such an inference cannot be drawn from a mere presumption. The established rule is that liability cannot result from an inference upon an inference or from a presumption upon a presumption. (*Schmidt v. Twin City State Bank,* 151 Kan. 667, 100 P. 2d 652; 1 Shearman and Redfield on Negligence, rev. ed., § 53, p. 139; *De-Glopper v. Railway & Light Co.,* supra.) The inference arises only from established foundation facts. Manifestly the inference cannot supply the foundation facts from which the inference arises."

It should be noted that in the Emigh case it was the plaintiffs' who had jurisdiction and control of the premises (*i. e.,* the wheat field) where the fire occurred. It was their land, their field and their crop. Furthermore, as indicated from the above quotation, there was no allegation that the truck started the fire. By way of contrast, compare the allegations of the petition in the instant case: Defendant has sole custody and control of the damaged property (the Buick car) and of the premises where it was located, and of the tools and equipment used to repair it; defendant was repairing the gasoline line and tank and draining the gasoline into an open container; while defendant was thus working on the rear part of

the car in his own garage, a fire broke out at the rear of said car and demolished it; a fire such as this does not ordinarily occur while repairing automobiles if the garage management uses proper care; the fire was the result of the defendant's negligent operation of the garage and negligent repairing of the Buick car; and neither plaintiff nor the owner of the car, who were not upon the premises, know just what specific acts of negligence of defendant caused the fire.

Thus, in the case at bar the petition alleges the so-called foundation fact to be—the use of the gasoline by defendant, in defendant's garage and upon defendant's premises, and while the car and all repair equipment and the gasoline in the open container were in the sole custody and under the sole dominion and control of defendant, caused the fire to destroy the Buick automobile. Having supplied the "foundation fact" or "initial fact" or "thing" which produced the injury, the application of the doctrine of *res ipsa loquitur* will then infer negligence on the part of defendant in the doing or commission of the act. That is to say, the inference of negligence will arise from the established fact so as to compel the defendant to move forward with his proof in order to rebut such inference of negligence. We would have much difficulty in trying to think of a set of facts and circumstances more susceptible to the application of the doctrine of *res ipsa loquitur* than are those of the instant case.

*Truhlicka v. Beech Aircraft Corp.,* supra, was a *res ipsa loquitur* case where we held that the petition stated a cause of action under the doctrine. There a painter was working on a thirty-foot ladder when defendant's traveling crane, operating on a track on defendant's premises and under defendant's jurisdiction and control, struck plaintiff from behind and injured him severely. Truhlicka's petition alleged that fact and then under the *res ipsa loquitur* doctrine the defendant's negligence was properly inferred—at least defendant then had the burden of going forward with his proof to rebut the inference.

The case of *Mayes v. Kansas City Power & Light Co.,* supra, is in itself a treatise on the *res ipsa loquitur* doctrine. There the plaintiff was watching a street parade from the sidewalk when a street lamp globe fell from its position overhead and struck plaintiff, causing him serious injuries. The street light fixtures and poles were under defendant's exclusive control. This court in approving judgment for plaintiff, said:

"Viewing this case as a whole it is a proper one for the application of *res ipsa loquitur*. The lamp and fixtures were such that ordinarily no injury would be

expected from their use if carefully constructed and maintained. Although defendant was not an insurer of the safety of those who use the streets, the duty of carefully constructing and maintaining the lamp so that it would not be likely to cause injury to those who rightfully used the street, was upon the defendant, under its contract with, and the ordinances of, the city, and the injury happened without any voluntary action of plaintiff."

We cannot distinguish the application of the doctrine of *res ipsa loquitur* in the Truhlicka and Mayes cases from its application in the case at bar. It follows that the trial court properly overruled the demurrer to the plaintiff's petition, and the judgment should be affirmed. It is so ordered.