Don McGRATH and Ralph Hulvey, Plaintiffs in Error,

v.

Vera B. FURR, Defendant in Error.

No. 36510.

Supreme Court of Oklahoma.

Feb. 14, 1956.

610

David H. Sanders, Tulsa, Bert McElroy, Tulsa, R. A. Wilkerson, Pryor, for plaintiffs in error.

Farmer, Woolsey, Flippo & Bailey, Tulsa, for defendant in error.

DAVISON, Justice.

This is an action for damages for personal injuries, brought by Vera B. Furr, as plaintiff against the defendants, Ralph Hulvey and his employer Don McGrath. The parties will be referred to as they appeared in the trial court.

On the evening of December 5, 1952, the plaintiff drove her 1950 Plymouth automobile into a filling station operated by the defendant, McGrath in the City of Tulsa, Oklahoma. The purpose of the visit was to stop the constant burning of the stop lights on the car. McGrath's employee, Ralph Hulvey was requested to remedy the defect. Plaintiff then drove her car off the driveway and onto a sloping piece of ground where, without setting the brake or putting the car in gear, she alighted therefrom. The defendant, Hulvey, inspected several places and then got a four-wheel floor jack, commonly called a low-boy jack, which he rolled under the car and raised it. He slid under the car on a "creeper" and disconnected the wires from the stop light switch, located on the frame of the car just forward of the left rear wheel. Then the car fell off the jack which turned and struck plaintiff on the foot and caused her to fall to the driveway. One of the vertabrae in her back was fractured. She was confined in a hospital and at home for several months for treatment of the injury. At the trial, medical testimony was introduced to prove the nature and extent of her resulting disability. This action which was filed on April 24, 1953 sought recovery of damages from the injuries sustained. It was tried to a jury, resulting in verdict and judgment for plaintiff in the amount of $18,000 from which the defendants have perfected this appeal.

The principal grounds relied upon for reversal are: asserted insufficiency of the evidence to establish negligence; admission of incompetent evidence over objection and exception; and failure of the trial court to properly instruct the jury upon the issues in the case. Many features of the first two propositions are interlocking as will be borne out by the discussion following.

The specific acts of the defendant, Hulvey, which, in her amended petition, plaintiff alleged constituted negligence and which she attempted to establish by evidence at the trial were that he "placed the jack beneath the automobile by placing the lifting portion of the jack upon the drive shaft of said automobile at a place approximately one and one half inches in front of the rear termination of said drive shaft and then and there elevated said automobile by means of the jack. * * * that such action left the automobile in an unbalanced and unsecure position where from its own inertia or the slightest touch would and did roll off the jack."

The only direct evidence that the jack was placed under the drive shaft was that of plaintiff herself, as follows:

"Q. Do you know where he placed the jack, that is the lifting part of the jack? A. On the drive shaft."

That was objected to as being a conclusion and exception was saved. The accident happened after dark at a place where it was necessary for Hulvey to use a flash light. Plaintiff further testified that, although she was working in an airplane assembly plant installing some of the electrical and radio wiring, she had no "experience, education or training in the mechanics of an automobile in any way, shape or form;" that she did not "know anything about automobiles." A full size scale drawing of the outline of the car on a long piece of wrapping paper was placed on the floor of the court room and the plain-

tiff stood on the paper at the same relative position with reference to the side of the car as she was at the time of the accident. The outline of her shoes was drawn on the paper. At the request of the examining attorney, she then placed a yardstick on the paper in the relative position of the jack handle, prior to the fall of the car. With the handle of the jack on the drawing, the cradle or lifting part of the jack lacked about one foot of reaching the drive shaft of the car.

The defendant Hulvey, who was under the car and was the only person who saw and knew where the jack was set, testified that the cradle thereof was placed under the frame of the car. He also testified that while he was under the car and after he had disconnected the switch and, while plaintiff was standing against the car at the open left front door, with only her left foot on the ground, the starter of the car began turning the motor and the wheels. He had raised the side of the body of the car but not enough to lift either wheel clear of the ground; that, when the starter turned the wheels, the car was propelled forward causing it to push the jack over and to fall. It pinned him beneath it so that others had to lift the car, in order to extricate him.

After the accident, plaintiff was taken to her home and, from there, to a hospital where she remained about three weeks. Following that she convalesced several months. During that time her car was kept by her brother who testified that he drove it some each week to keep it in operating condition. A short time prior to May 1, 1953 following the accident on December 5, 1952 and after this action was filed, plaintiff had a mechanic examine the drive shaft of her car. He appeared as a witness and testified that he found some marks on the rear end of it that could have been made by a jack. He further testified that he found no marks on the frame of the car. Photographs of the drive shaft and of the frame, taken on May 1, 1953 were introduced also. The pictures showed many spots on the drive shaft and two of them had been marked around with a pencil and also with a white crayon. All of the evidence, about the condition of the drive shaft and frame of the car some five months after the accident, was properly objected to and exceptions saved. No reliable proof was made that the condition of the car, at the time of the inspections and of making the pictures, was the same as at the time of the accident.

 Defendants strenuously argue that, since no proper predicate was laid, all of the evidence on that point was incompetent and highly prejudicial. With that contention we agree. In the early case of St. Louis & S. F. R. Co. v. Hart, 45 Okl. 659, 146 P. 436, 439, it was held error that a witness was permitted to testify as to the condition of a railroad crossing as it existed eight or ten weeks after the accident, in the absence of proof that the condition was the same as at the time of the injury. A long list of authorities is cited to the effect that,

"* * * without evidence that the crossing was substantially in the same condition at the time of the injury as at the time to which the testimony related, it was error to admit it."

That rule was reaffirmed in the cases of Midco Oil Corp. v. Hull, 182 Okl. 21, 75 P.2d 1126, and Skelly Oil Co. v. Jordan, 186 Okl. 130, 96 P.2d 524. The last cited case was followed in the case of Champlin Refining Co. v. Smith, 190 Okl. 287, 123 P.2d 253.

The same situation obtains as to the admission of the photographs, and the rule is founded upon the same sound reasoning. In the case of Colonial Ref. Co. v. Lathrop, 64 Okl. 47, 166 P. 747, L.R.A.1917F, 890, this court approved the action of the trial court in excluding certain photographs because they did not show the place or subject as it existed at the time in question. The following quotation from the Minnesota Court was there approved and adopted,

"Their value depends upon their accuracy. They must be shown by extrinsic evidence to be faithful representations of the place or subject, as it existed at the time involved in the controversy." Stewart v. St. Paul Ry. Co., 78 Minn. 110, 80 N.W. 855.

**612**

A definite and proper application of the rule is contained in the case of Garrison v. Dixie Traction Co., 313 Ky. 565, 232 S.W.2d 997, 998, wherein it was held that,

"In action arising out of automobile accident, photograph of bus involved in the accident, taken two days after accident, was improperly admitted as showing condition of bus as to cleanliness upon day of accident, in absence of satisfactory evidence to establish that bus was in same condition as when photograph was taken as when accident occurred."

Particularly applicable here is the following quotation, taken from the body of the opinion:

"While there was some evidence that the bus was in the same condition when the photograph was taken as when the accident occurred, we do not think the evidence along that line was satisfactory, being largely negative testimony. Those testifying said the bus had not been washed or changed to their knowledge. We think the photograph, taken two days after the accident, was improperly admitted as showing its condition as to cleanliness on the day of the accident."

In the case at bar plaintiff's entire case was founded upon the alleged negligence of the defendant, Hulvey, in placing the jack under the drive shaft, instead of under the frame of the car. The evidence to establish that essential fact consisted of the testimony of plaintiff which was a conclusion of the witness and incompetent as evidence; the testimony of the mechanic and the pictures of the drive shaft, both of which were as to the condition of the drive shaft some five months after the accident without positive proof that it was in the same condition as at the time of the accident. This evidence was all admitted over proper objection and exception.

In the St. Louis & S. F. R. Co. v. Hart, supra, the error in admitting the incompetent evidence was held not to be sufficient to warrant a reversal of the judgment but a remittitur was ordered. This was by reason of the provisions of what is now 22 O.S.1951 § 1068. In the case at bar, however, without the objectionable testimony, there was no proof of actionable negligence within the allegations of the amended petition. Therefore the error has "probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." 22 O.S.1951 § 1068.

Having come to this conclusion, it is unnecessary to consider the other propositions urged for reversal.

The judgment is reversed and the cause remanded with directions to grant a new trial.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, HALLEY, JACKSON and HUNT, JJ., concur.

CORN and BLACKBIRD, JJ., dissent.