Vera B. FURR, Plaintiff in Error.

v.

Don McGRATH and Ralph Hulvey, Defendants in Error.

No. 37727.

Supreme Court of Oklahoma.

March 10, 1959.

Rehearing Denied April 28, 1959.

Application for Leave to File Second Petition for Rehearing Denied June 9, 1959.

G. C. Spillers, G. C. Spillers, Jr., Tulsa, for plaintiff in error.

Sanders, McElroy & Smith, Tulsa, for defendants in error.

BLACKBIRD, Justice.

The defendant in error, McGrath, is the operator of a gasoline filling, or service, station in Tulsa, and Hulvey, the other defendant in error, was, at the time of the accident involved herein, employed at said station as an attendant. The action, which this appeal concerns, was instituted against both McGrath and Hulvey, as defendants, by plaintiff in error, as plaintiff, to recover damages for personal injuries she suffered when, on a night in December, 1952, she drove her 1950 Model Plymouth Sedan to said station to get its stop lights fixed so they would not burn constantly; and, after the defendant Hulvey undertook to fix them, and had raised the sedan on an "O-Boy" jack (mounted on wheels, rollers and/or casters), the jack rolled out from under the sedan, striking plaintiff's right foot, knocking her down to a sitting position on the filling station's driveway, and causing her, as she fell, to strike her head against the car's open front door.

Our continued reference to the parties will be by their proper names and/or trial court designations.

When the car, in some manner, came off of the jack, which rolled out from under it, and struck plaintiff, as aforesaid, she was standing on the driveway at the side of the car, where, from her standing position, she could not see under the car, and the only part of the jack she saw was its handle sticking out from beneath the car. As will be noted from the basic facts in the appeal growing out of the first trial of this case, McGrath v. Furr, Okl., 293 P.2d 609, 611, the defendant Hulvey, who jacked up the car and then got under it on a creeper "was the only person who saw and knew where the jack was set * * *". As to the position of the jack under the car, he testified it was so placed that the left side of the car's frame rested on the jack's cradle. As will be further noted from McGrath v. Furr, supra, at the first trial, plaintiff's theory of defendants' negligence was based on the allegation and premise that Hulvey had placed the jack under the car's driveshaft, instead of its frame. As pointed out in the cited case, that hypothesis was not supported by any evidence except plaintiff's testimony, which, in view of the fact that she could not see under the car from where she was standing, was termed, in the cited opinion, "a conclusion of the witness and incompetent as evidence * * *".

Before the last trial of the cause, plaintiff filed therein a second amended petition, in whose Paragraph V, (rather than attempting to allege just how and where the jack made contact with the car) she alleged generally that "defendants were negligent in * * * improperly" placing "the jack so that it would not support the automobile." Immediately following this allegation, plaintiff further alleged that "all of the instrumentalities being used by the defendant, his agent, servant and employee, were within the exclusive control of the defendants and that the plaintiff had no control, actual or physical, of any of the instrumentalities or her automobile at the time of the accident which caused her injury." The plaintiff's paragraph V also contained specific allegations of defendants' negligence, but none of them dealt with any specific position of the jack under the car.

In the separate answers they filed, both defendants specifically recognized that, by the above described pleading, plaintiff was relying upon the doctrine of res ipsa loquitur for making out a prima facie case of

defendants' negligence, and, inter alia alleged, in substance (by way of forestalling application of the doctrine) that, at the time of the accident, plaintiff was in full charge of her automobile and had full custody and control over it.

At the trial, after relating how she drove the car to the station and apprised Hulvey she was there for the purpose of getting the defective lighting fixed, she testified he told her to drive the car to a place he pointed out on the station's driveway, away from the gasoline pumps, and that he said he would see what he could do. She further testified, in substance, that after she had driven the car to that place, she turned off its motor, put the car in neutral gear, and remained sitting behind the steering wheel. She testified further, in substance, that after Hulvey had walked over to the car where it then stood, he asked her if she had a flashlight and she thereupon produced hers from the car's glove compartment, and handed it to him. She further testified that, with the flashlight, he then looked under the car's hood, then under its dash board, and then went behind the car and stated that he would have to get a jack and jack up the car. When he rolled the O'Boy jack in question up to it, plaintiff stepped out of her car and stood by its left side, leaving open the front door, on that side of the car. She testified that Hulvey then placed the jack under the left side of the car, jacked it up, and then got the creeper and rolled under the car on it. According to plaintiff's testimony, Hulvey then asked her to turn on the car's light switch, and, when she leaned toward the car to do so, but without touching it, the car slipped off the jack, which rolled out from under the car and hit her.

To the contrary, the defendant Hulvey, after relating that he did not jack the car up high enough to raise any of its wheels off of the driveway, testified that, after he got under the car on the creeper, he asked plaintiff if the stop lights were out and she answered that they were, and also said: "Wait, let's see if the tail lights are burning." Said defendant further testified that

plaintiff then went around the car and started to get into it. He also stated that, as he was getting ready to come out from under the car, plaintiff set one foot in the car and then he heard the car's starter turning, and then the jack turned over and the car rolled forward.

Unlike the first trial, at the trial here involved, plaintiff made no effort to testify what particular part of the car was resting on the jack, but testified specifically that she didn't look under the car to see where it was placed. After Hulvey had testified that he placed the jack under the left side of the car's frame (which was the same side of the car toward which the filling station's driveway slanted) plaintiff testified that, after the jack hit her, the defendant Mc-Grath came over and told Hulvey, "I don't want to ever see you raise a car up on a jack like that again."

Among the witnesses for plaintiff was one George E. McNeill, who had been in the business of repairing and servicing O'Boy jacks for twelve years, and testified that he had lifted "thousands" of automobiles with that type of jack. McNeill further testified that the way to raise the rear end of an auto, with such a jack, is to place the jack in the center of the auto's rear housing, balance it and center the auto's differential where it will not slip off the points or prongs around the outer edge of the jack's cradle. This witness further testified, inter alia, as follows:

"Q. * * * Would you explain to the jury the proper use of the jack in using it on the frame of an automobile?

* * * * * *

"A. If you use that on the frame of an automobile, say this was the frame of the automobile, you slide this jack under until these prongs are flush with the inside of the frame, so it can grasp. * * *

* * * * * *

"Q. What will happen if the little lugs (points or prongs) are not engaged on the frame of the automobile? In other words, if the frame is just rest-

ing flatly upon these four lugs * * *.

A. It will slip out."

Other testimony of this witness was to the effect that when an O'Boy jack is raised under a car, even though it is not raised high enough for any of the car's wheels to be suspended in the air, and the body of the car is raised only eighteen inches, or enough to flex the springs, the jack is then holding up a weight of "one thousand pounds anyway", and the amount of stress on the jack, in a measure, depends upon "what it (the jack) is sitting on and at what angle it is sitting, whether straight or not." The general tenor of McNeill's testimony was that if an O'Boy jack is properly placed when holding part of an auto's weight, such an accident as the one in question will not happen, and he stated specifically that the jack would hold "a couple or three hours" on a "black top driveway in a filling station."

At the close of the trial, plaintiff, by her "Requested Instruction No. II" sought application of the res ipsa loquitur to the case, but said request was refused. By its instruction No. I, the court did tell the jury that the burden of proof was upon plaintiff "to establish by a preponderance of the evidence all of the material allegations of the petition and unless the plaintiff has proved these allegations by a preponderance of the evidence, your verdict must be for the defendant." In its Instruction No. 15, the court, inter alia, further told the jury:

"These instructions contain all the law, whether statute or otherwise, to be applied by you in this case, and the rules by which you are to weigh the evidence and determine the facts in issue."

After its deliberations under the court's instructions, the jury returned a verdict for the defendants and judgment was entered accordingly.

Plaintiff's first proposition in her present appeal concerns both the trial court's alleged error in refusing to give plaintiff's Requested Instruction No. II, and the more general argument that, in failing to give the jury any instruction whatsoever on the doctrine of res ipsa loquitur, said court failed in its duty to instruct the jury on the fundamental issues of the case. Since the latter issue is joined by defendants' contention that, on the basis of the evidence, the doctrine of res ipsa loquitur could not have been applicable to the case, we will consider this issue only, and without reference to the correctness or incorrectness of plaintiff's requested Instruction No. II, as particularly worded.

The reasons defendants claim that the doctrine of res ipsa loquitur is not applicable to this case are set forth opposite the designations "(a)" to "(d)", both inclusive, on the last of the pages of their brief dealing with their Proposition No. 1. Reason "(b)" is as follows:

"The O'Boy jack appliance furnished by the defendants was not defective."

Under sub-heading B of Proposition No. I, defense counsel refer to plaintiff's recognition of the absence of any claim by her that any defect in the jack caused the accident, and to her stated position that the only issue as to the cause of the jack's becoming disengaged from the car and darting out from under, it was whether this was the result of the jack's being improperly placed under the car or was the result of plaintiff's having inadvertently started the car herself. Defense counsel argue that, if the defendant Hulvey's testimony indicating the latter to be the cause of the jack's becoming disengaged, is not accepted, then what caused this to happen is a "mystery", and they quote a portion of our opinion in National Union Fire Insurance Co. v. Elliott, Okl., 298 P.2d 448, 451, in support of their statement, in substance, that the doctrine of res ipsa loquitur cannot be invoked in an accident case merely because the cause of the accident is unknown or the plaintiff is unable to prove it. We agree with the latter statement as an abstract proposition. But, we do not think the cited case is analogous. That case involved loss from a fire in a grain field; and it was plaintiff's theory that, through

the doctrine of res ipsa loquitur, negligence of the defendant in starting the fire might be inferred merely from evidence showing, principally that there was fire "all around" defendant's truck soon after he stopped it in the field, that there was none there before, that the truck was six years old, and that its location was at a distance from the roadway. There was no proof of anything about the truck that would, or did, cause such a fire, and we pointed out that plaintiff's allegation that it started in the truck was never supported by evidence. In refusing application of such doctrine to that case we cited the principle recognized in Champlin Refining Co. v. George, 182 Okl. 118, 76 P.2d 895, and applied in Emigh v. Andrews, 164 Kan. 732, 191 P.2d 901, and other cases, that:

"* * * the doctrine of res ipsa loquitur cannot be invoked until, as a preliminary proposition, a plaintiff established what thing caused the injury, and that the thing causing the injury was under the defendant's control." [298 P.2d 451.]

We think the present case is more analogous to Travelers Ins. Co. v. Hulme, 168 Kan. 483, 213 P.2d 645, 649, 16 A.L.R.2d 793, in which the Emigh case was discussed and, in speaking of the subject doctrine, the "thing" causing the injury was referred to as the "initial" or "foundation" fact. There the foundation fact was said to be defendant's use of the gasoline while working on the automobile, and the court further said:

"Having supplied the 'foundation fact' or 'initial fact' or 'thing' which produced the injury, the application of the doctrine of res ipsa loquitur will then infer negligence on the part of defendant in the doing or commission of the act."

In the present case, there must be no confusion or misapprehension about the fact that (according to plaintiff's evidence) the cause of her injuries was the jack's becoming disengaged from under the car in such a manner as to roll toward, and strike, her. As we have indicated, her witness McNeill's testimony was to the effect that such a jack will not do this when it is properly placed, or lodged, under a car, without some accessory or intervening force being exerted upon it. We do not think the fact that plaintiff did not see, and could not prove, exactly what occurred under the car before the jack darted out from under it (and to that extent the cause of the accident might be called a "mystery" as far as she was concerned) precluded application of the doctrine of res ipsa loquitur to this case.

The foregoing conclusion foretells our rejection of defendant's argument, under sub-heading C of their Proposition No. I, that what caused the jack to act thusly "was not wholly in the power of the defendant to prove and was not beyond the power of the plaintiff to prove * * *". In attempting to support this argument, defense counsel say: "* * * Plaintiff was present and in close contact with her automobile at all times. She had an opportunity to, and did observe the entire operation." As indicated by the evidence we have described, these statements are not accurate. We think the evidence shows beyond any doubt (and defendant points to none contra) that from where plaintiff was, after the jack was brought over to the point from which it was rolled under her car, she did not, and could not, see what occurred under the car. Of course, it cannot be said that she did not have the *opportunity* to see, or that there was anything to have prevented her from bending over, or squatting, and looking under the car to observe the situation there, but the fact remains that she did not do this, and consequently will never know, of her own personal knowledge or from non-partisan evidence, exactly what that situation was immediately before the jack darted out from under the car. Furthermore, judging from what the evidence indicates concerning her inexperience and lack of learning in such matters, it is questionable if she would have been able to relate what caused the jack to become disengaged, had she looked under the car.

Under their Proposition No. I, sub-heading C, defendants also contend that in

a case like the present one when it is alleged or proved that specific acts of defendants' negligence cause the accident, the doctrine of res ipsa loquitur is inapplicable, citing Bewley v. Western Creameries, Inc., 177 Okl. 132, 57 P.2d 859, Billington Lumber Co. v. Cheatham, 181 Okl. 402, 74 P.2d 120, and McAlester Coca-Cola Bottling Co. v. Lynch, Okl., 280 P.2d 466. This argument is without merit. Although, as hereinbefore mentioned, plaintiff's second amended petition alleged certain specific acts of negligence on the part of the defendants, in addition to the more general allegations of the improper lodging or placing of the jack under the car, this, under the cited cases, did not preclude invoking the subject doctrine as to the general allegation, upon failing to prove the specific allegations. As hereinbefore noted, plaintiff made no effort, as she did in the first trial, to establish by direct testimony or evidence, what specific acts of Hulvey constituted the "improper placing" of the jack. In admitting that she did not see what occurred under the car, she, in practical effect, conceded her inability to make such proof. However, if the doctrine of res ipsa loquitur was applicable, she was not required to attempt this, but could await defendants' (who knew, or had means of knowing, what occurred under the car) coming forward with an explanation of that.

 Under the second part of their Proposition One's sub-heading C, defendants maintain that by Hulvey's testimony, the defendants presented a satisfactory explanation of the cause of the accident; that his testimony showed that no negligence on defendants' part was responsible for the jack's becoming disengaged from the car; and that said testimony thus destroyed the rebuttable presumption (under the res ipsa loquitur doctrine) that negligence on their part was the cause of it. This argument does not demonstrate that the trial court correctly omitted instructing the jury on the doctrine of res ipsa loquitur. It is specious in its assumption that the jury was bound to believe Hulvey's version of the way the accident occurred or to accept it as showing defendants were free of culpable negligence in the matter. Such a theory would leave the jurors no alternative, nor basis upon which to find defendants negligent, if they did not see fit to give Hulvey's testimony such weight and effect. It is identical with the argument made by the defendant in Mack v. Reading Co., 377 Pa. 135, 103 A.2d 749, 752, 41 A.L.R.2d 927. There the court said:

"* * * probably no case in our reports has been more frequently cited than Nanty-Glo Borough v. American Surety Co., 309 Pa. 236, 163 A. 523, which held that however clear and indisputable may be the proof, when it depends upon oral even though uncontradicted testimony the credibility of the witnesses is nevertheless for the jury and it is the province solely of that tribunal to decide the issue. In the present case the jury may not have believed the testimony offered by defendant's witness * * *. Be that as it may, the court obviously could not have declared as a matter of law that defendant's evidence had to be believed and that defendant was therefore freed from the charge of negligence."

To the same effect, see the quotation from Kohner v. Capital Traction Co., 22 App. D.C. 181, 62 L.R.A. 875, appearing in A & A Taxicab Co. v. Bass, 177 Okl. 248, 58 P.2d 567, 569. Most authorities agree with the cited view. 65 C.J.S. Negligence § 220, p. 1028. Confusion and error in regard to this subject has often been the result of incorrect deductions from abstract and generalized statements; and this is inherent in the position taken by defendants. For instance, it has been said that: "* * * when the physical condition causing the injury has been shown and is not explained by the defendant, an inference of negligence may be drawn as a legitimate deduction of fact." Keefer v. Public Service Co. of Oklahoma, 185 Okl. 94, 90 P.2d 409, 411. This is true, but the converse of this statement (namely that when the cause of the injury, or defendant's version or explanation of it, is introduced, the res ipsa loquitur

doctrine is *not* applicable and its inference of negligence may not be drawn) does not follow as a necessary corollary. Also it is true that "when a satisfactory explanation is offered by defendant, the inference is overcome." Keefer v. Public Service Co., supra, citing Carter Oil Co. v. Independent Torpedo Co., 107 Okl. 209, 232 P. 419. But the question then arises: "satisfactory" to whom? Who is to determine the satisfactoriness of defendant's explanation? This can only be the trier of facts, unless all reasonable men are bound to reach the same conclusion, even though the defendants' evidence is undisputed, as was Hulvey's testimony in this case regarding the situation which existed under the car before the jack became disengaged under it. The rule, as stated at 65 C.J.S. Negligence § 220, p. 1028, is as follows:

> " * * * when all the evidence is in, the question whether defendant has rebutted the inference or presumption is for the jury, and the case must be submitted to the jury to determine where the preponderance of the evidence lies, for the weight of the explanation, like the weight of the inference, is for the determination of the jury; * * *".

The above "yard stick" may also apply to determining whether or not there is evidence in the case tending to establish the various elements necessary for application to it, of the subject doctrine. Thus, if, on the basis of the evidence, all reasonable men would have to agree that .the thing that caused plaintiff's injury was not in the defendants' control, or that the accident was not of a character that does not ordinarily occur unless such party is negligent, and that defendant is in no better position than plaintiff to know, and explain, how it happened, then the court may, as a matter of law, determine that the case is not a proper one for application of the doctrine. However, if all reasonable men would not so agree, then the court should give the jury such instructions as will assist it in determining whether or not res ipsa loquitur should apply, and, if so, how. In the former category is the case of Redfoot v. J. T. Jenkins Co., 138 Cal.App.2d 108, 291 P.2d 134, 139, in which it did not appear probable that a fire originated "in careless handling of a light wire except" on the basis of certain assumptions not supported by any evidence.

■ The mere statement of the foregoing principles should portend our conclusions as to defendant's argument under their Proposition No. I, sub-head A. Therein they contend that the subject doctrine was not applicable to this case for the further reason that they "did not have the exclusive control and management of the *instrumentalities* causing the injury." (Emphasis ours.) As we have pointed out, plaintiff's theory was that "the thing", or operation, which caused the accident was the improper placing, or lodging, of the jack under the car. According to her testimony, she did not turn the starter switch or put into play any other force that could have disengaged the jack; and she introduced the testimony of McNeill to show that, without some intervening force, such a jack will not become disengaged *if properly engaged, or lodged,* to begin with. There can be no question but that, on the basis of plaintiff's evidence, the jacking up of the car was Hulvey's idea and was done "at his direction" or under his exclusive control. The fact that plaintiff owned the automobile involved was immaterial in view of the fact that Hulvey jacked it up at the place, and in the manner, of his own choosing, and without, according to plaintiff's testimony, any effort being made by her to intervene in, or exert any control over, the operation, and without her doing anything that would, or could, have disengaged the jack. The situations involved in Cosden v. Wright, 202 Okl. 211, 211 P.2d 523; Carter Oil Co. v. Independent Torpedo Co., 107 Okl. 209, 232 P. 419; and Eastern Torpedo of Ohio Co. v. Shelts, 121 Okl. 129, 247 P. 974, are dissimilar to the one which plaintiff's evidence tends to show here; and the decisions in those cases are neither controlling nor persuasive in this case. In none of them was there evidence tending

to show (as does plaintiff's evidence) that the accident occurred by reason of a breach by the defendants therein of some duty they owed their adversary in the performance of an operation over which they had exclusive control. In the Cosden case, supra (as pointed out in the opinion therein) the unloading of the gasoline, during which the explosion occurred, was accomplished by the combined efforts of the defendant company and the plaintiff. In the Carter Oil Company case, supra, the premature explosion of the well's nitroglycerin shot, or torpedo, may just as reasonably (as far as there was evidence to indicate) have been caused by the condition of its receptacle and the well prepared and controlled by plaintiff, as by any act or omission on the part of the defendant. In neither of those cases, nor in the Eastern Torpedo case, supra, was there evidence like plaintiff introduced in this case tending to show that an accident of the character involved does not ordinarily occur without negligence on the part of the defendant.

As hereinbefore indicated, we cannot agree with defendants' argument under sub-heading D of their Proposition No. I, that the court's instructions covered the fundamental issues of the case. As indicated, there was no instruction given by the court that authorized the jury to find the defendants culpably negligent if it accepted plaintiff's theory as to the cause of the accident, and rejected defendants'. As hereinbefore indicated, plaintiff, on the basis of the evidence she introduced, had a right to have the jury instructed in such a manner that it could use the doctrine of res ipsa loquitur in reaching its verdict in the event this occurred. Failure to so instruct was prejudicial to such right, and reversible error.

Having arrived at this conclusion, it is unnecessary for us to consider any of the other assignments of error.

Accordingly, the trial court's judgment is vacated and the cause is remanded to said court for a new trial in accord with the views herein expressed.

WILLIAMS, V. C. J., and WELCH, JACKSON and BERRY, JJ., concur.

DAVISON, C. J., and JOHNSON and IRWIN, JJ., dissent.

DAVISON, Chief Justice (dissenting).

I am unable to agree with the opinion promulgated by the majority of my associates in this case. I am of the opinion that the rule of res ipsa loquitur has no application in this case and that the instructions by the trial court are sufficient.

In Sand Springs Park v. Schrader, 82 Okl..244, 198 P. 983, 986, 22 A.L.R. 593, we said:

"The phrase 'res ipsa loquitur' is 'merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as to the cause of the accident.' "

In Cosden v. Wright, 202 Okl. 211, 211 P.2d 523, 527, we quoted from Thompson on Negligence, Volume 8, Section 7635, pp. 1022–1024:

" 'The rule of "res ipsa loquitur" is a rule of evidence only. It takes more than the mere happening of an accident to set the rules in operation. It must be shown that the act was of such a character, as, in the light of ordinary experience, it is without explanation, except on the theory of negligence. The thing causing the accident must have been under the control of the defendant or his servant at the time of the accident. The doctrine proceeds on the theory that it is easily within the power of the defendant to show that there was no negligence on his part. * * * Neither does the doctrine apply where the facts shown are equally consistent with the hypothesis that the injury was caused by the negligence of the injured person or by that of defendant, or by both combined.' "

With the above definition and basic principles in mind let us examine the allegations of the petition and generally the evidence.

In the petition the plaintiff alleged the defendant, McGrath, was a lessee operating a filling station and the defendant, R. Hulvey, was his employee and that in the status of invitee, plaintiff drove her car into the station to have the lights on her car fixed so they would turn off; that R. Hulvey had her drive the car to a specified location where he placed a four-wheel jack under the car and raised it and then slid under the car on a scooter; that the jack failed to hold and fell and the jack was "projected" from under the car and against her, causing described injuries and that defendants owed her care and a duty to warn her of dangers; that defendants were negligent in that they improperly placed the jack under the car; that all instrumentalities being used were within the exclusive control of defendants and that plaintiff had no control; that defendants were negligent in that the jack was placed under the car without the brakes being set and without blocking the wheels to keep the car from rolling forward by gravity; that defendants were negligent in placing the jack under the car without looking to see if the jack was securely placed; that defendants were negligent in failing to warn plaintiff of the danger of standing near the car. The petition thereby laid the foundation for res ipsa loquitur and negligence.

The defendants denied the allegations of the petition or that the car was in their control and set up contributory negligence and certain affirmative defenses.

The testimony of plaintiff was that she was 51 years old, divorced and worked as a saleslady until the war, when she went to the west coast and worked for "Douglas", doing electrical work and on general assembly, doing everything in assembling whole ship, parts and all; that after the war worked as a saleslady and then for "Century Geophysical" in electrical department for 15 months to July 5, 1952, when she began working for "Douglas" in Tulsa, wiring instrument panels and "all over", until December 5, 1952, when she was injured; that she had owned three Plymouths before buying the Plymouth she was driving; that she drove in the station to get her lights fixed when they would not turn off and at request of Hulvey drove the car away from the pumps, and turned motor off and put car in neutral and sat in car and did not put on emergency brake or leave car in gear; that Hulvey did not ride when she drove the car; that Hulvey came up and she loaned him a flashlight; that she has no knowledge of auto repair; that Hulvey looked under the hood and dash and went behind car and brought a jack and creeper and she got out of car and stood by left side with left door open; that she "was watching the boy"; that Hulvey put the jack under the left side and jacked up car so left wheel was free and scooted under the car and Hulvey requested she turn on the light switch and as she turned to do so and before she could do so the car slid off the jack and the jack popped out and hit her, knocking her down; that defendant, McGrath, came up and after lifting the car off of Hulvey told Hulvey not to raise a car like that again.

The plaintiff used as a witness the defendant, McGrath, who testified the station yard was "blacktop" and had a gradual slope; that he did not see the occurrence, but the jack was partially under car and on its side when he came up and later helped plaintiff walk to her home across the street; plaintiff used this witness to demonstrate the wheeled hydraulic jack and that the lifting saddle moved 6½ inches forward when elevated.

The plaintiff used the defendant, Hulvey, as a witness and corroborated plaintiff as to placing the car away from pumps; that he placed jack under frame at side; that he did not set brakes or block wheels; demonstrated jack and use so he could get under car on the creeper; that it was getting dark; that he did not have the keys; that plaintiff was with him when he looked under hood and in back and was be-

side car and that the left wheel was on the ground.

Plaintiff used as a witness McNeill and Homan, hydraulic jack expert and service manager respectively, who testified extensively as to the use and characteristics of the jack and that the proper use in such cases was to place the jack under the differential or rear axle and to use under the side frame is not best practice; that a stand should have been placed under the car.

Plaintiff exhibited an identical hydraulic jack and the dash instrument board of a 1950 Plymouth auto.

This in brief is the pertinent portion of the testimony and evidence of the plaintiff.

Defendant, McGrath, denied making any statement to Hulvey criticizing the method of using the jack and defendant Hulvey testified that when he requested plaintiff to turn on the light switch plaintiff put one foot in car and the starter engaged causing the car to move forward and off the jack. Witness, Smith, auto mechanic, testified extensively that the jack was properly used and as to the characteristics of the jack and related an experiment made by him at the place and under the same circumstances as claimed by plaintiff which negatived contentions of plaintiff and her witnesses.

It is under these circumstances and this evidence that the majority opinion concludes an instruction of res ipsa loquitur should have been given. I do not agree.

At least one of the basic principles of res ipsa loquitur is missing in that the instrumentalities involved were not within the required control of the defendants.

In this case the instrumentalities involved were the jack, which was the property of McGrath, and the car, which was owned by the plaintiff. The combination of the two instrumentalities resulted in the plaintiff's injuries. Neither, standing by itself and separate and apart from the other, would of itself cause the injury. Plaintiff and defendant were both present and under the plaintiff's own testimony she put the car in neutral and did not put on the emergency brake. The effects of plaintiff's action in this respect upon the stability of the car are too well known to require further explanation and are particularly significant in view of the holdings of this court. The voluntary statement of plaintiff that she turned the car over to Hulvey was a conclusion and was properly stricken.

In Cosden v. Wright, supra, referred to in the majority opinion, the plaintiff's trucks were hauling gasoline for defendant and in unloading the gasoline at defendant's plant, the hose used was furnished by defendant. After the hose had been connected and plaintiff's driver and defendant's representative temporarily left, an explosion occurred and a fire was burning at the rear of the truck. The cause was not known. Plaintiff alleged no specific act of negligence and relied on res ipsa loquitur and the case was submitted to the jury on that theory. The jury returned a verdict for plaintiff. In reversing the judgment we stressed the separate ownership of the truck and hose and that although the method of unloading was subject to direction of defendant, the operation was accomplished by both plaintiff and defendant, and that in such situation:

"* * * the management and control of the instrumentalities required by the rule means something more than the actual possession and use at the time of the accident and that it must include that previous management and control which is responsible for the fitness of the instrumentalities for the intended use. * * *"

In Laffoon Oil Company v. Flanagan, Okl., 330 P.2d 194, 197, the plaintiff was a pumper employed by Laffoon on an oil lease and sued Laffoon and McDaniel Well Service Company for damage to his truck caused by a falling derrick. McDaniel had been employed by Laffoon to service oil wells on the lease. In performing this service McDaniel used the existing steel derrick over the well and after installing a crown block started to pull the rods, but before the slack had even been taken up the derrick collapsed and fell on the truck.

Plaintiff alleged negligence by Laffoon in maintaining the derrick and that the derrick was not properly constructed to withstand the pressure and that McDaniel was negligent in failing to test the derrick, that the guy wires were loose and for other reasons. The jury returned a verdict for plaintiff, Laffoon and McDaniel appealed. In reversing the judgment we stated no one knew the cause of the collapse and as to the applicability of res ipsa loquitur against McDaniel stated:

"But, defendant in error contends that the doctrine of res ipsa loquitur is applicable against this plaintiff in error. This would be true except that McDaniel Well Service Company did not have the necessary management of the instrumentalities involved. One of the essential factors in the application of that rule is that all of the instrumentalities must have been under the control of the person against whom the rule is asserted. Carter Oil Co. v. Independent Torpedo Co., 107 Okl. 209, 232 P. 419. The management and control contemplated means 'something more than the actual possession and use at the time of the accident and that it must include that previous management and control which is responsible for the fitness of the instrumentalities for the intended use.' Cosden v. Wright, 202 Okl. 211, 211 P.2d 523, 528. Here, the derrick was under the management and control of the lease owner."

It is my belief that the cited decisions absolutely bar from this case any application of the doctrine of res ipsa loquitur but if these are not sufficient then plaintiff has by her allegations of negligence, and particularly by her evidence and contra evidence of defendants, removed from the case any reason for the application of the doctrine.

The majority opinion ignores or passes over all the testimony and evidence of plaintiff's witnesses and exhibits that were aimed at proving negligence on the part of defendants as to the exact reason why the jack slipped from under the car. The evidence was more extensive and varied than the allegations of the petition but it was admitted and considered by the jury. Even if the doctrine of res ipsa loquitur was originally applicable there was nothing left for it to operate on and therefore was correctly refused by the trial judge.

Evidence of plaintiff and her witnesses, as hereinbefore related and the slope of the yard and covering of "blacktop", the forward movement of the jack saddle, improper use of jack at side instead of under rear axle, that the lugs on the saddle would cause the saddle to slip on the frame if not properly placed, and failure to use a stand, and every inference to be drawn therefrom, together with the counter evidence of defendants, exhausted every possibility of why the injury occurred.

In Billington Lumber Co. v. Cheatham, 181 Okl. 402, 74 P.2d 120, 122, we said:

"The correct principle, as we gather from our decisions, is that where the evidence raises no issue as to the specific allegations of negligence the plaintiff may resort to his general allegations, if any, and invoke the doctrine of res ipsa loquitur where the facts and circumstances as to the instrumentality and resultant injury as above set out are present. However, if the evidence raises an issue on the specific acts alleged, the reason for the application of the doctrine is thereby removed from the case. Bewley v. Western Creameries, Inc. [177 Okl. 132, 57 P.2d 859], supra. There the court specifically held that the doctrine in question does not apply where there is evidence to establish the cause of the accident, or, in other words, where there is evidence to establish the specific acts alleged. The rule there expressed in no way infringes the pronouncement in the Guilford Case [Guilford v. Foster & Davis, Inc., 131 Okl. 148, 268 P. 299], above.

"The California and United States court cases cited are not in conflict

with our views here expressed. They are authority for the proposition that the doctrine of res ipsa loquitur cannot apply where there is direct evidence of the cause of the injury or where the same facts which give rise to an inference of negligence on the part of defendant give equal support to an inference that the injury resulted from an event not attributable to defendant."

The fact that the jury gave a verdict for the defendants is not proof of grounds that plaintiff should now have the benefits of the doctrine of res ipsa loquitur.

The verdict and action of the trial court should have been affirmed.

I am authorized to state that Mr. Justice JOHNSON and Mr. Justice IRWIN concur in the above dissenting views.